# JOHN W. SYKES, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, March 26, 1901.**

1. **Negligence: DUTY OF RAILROAD COMPANY TO FURNISH REASONABLY SAFE CARS.** A railroad company owes a duty to all persons whose avocations require them to go on its cars in connection with its carrying business; namely, to have the cars in such repair that they may be used with reasonable safety.

2. ———: ———. What means the railroad company ought to employ to this end, and when they should be employed, depends always on the surrounding circumstances.

3. ———: ———: ———: DUTY ON RECEIVING CARS FROM CONNECTING LINE. If a railroad company receives a car from a connecting line, it must use that degree of care which is compatible with efficient service and exercised by well-managed railway companies generally, to see that it is safe or set it out if it is not.

4. ———: ———: ———. These obligations and responsibility for non-compliance with them, are based on the just and reasonable requirement that a party providing an appliance, machine, vehicle, place or structure of any kind, to be used in his occupation and with the intention that people with whom he has business and their help, shall work with, about or in it, must exercise prudence to see that the thing he furnishes is not so imperfect or out of order as to cause injury to persons thus employed, while themselves observing due care.

5. ———: ———: ———: DEGREE OF CARE. And one who carelessly furnishes dangerous premises or appliances to be used by others in transacting business with him or business connected with his own, is liable to any one harmed thereby while free from contributory negligence.

Vol 88 app—13

Sykes v. St. L. & S. F. Ry. Co.

6. ——— : ——— : ———: RAILWAY COMPANY, BENEFICIARY
OF FRANCHISES. A railway company as the beneficiary of fran-
chises conferred by the State, among which is the right to take
tolls for transporting freight, is under an obligation to the public
to transport it in cars on which people may work safely, as well as
passenger coaches on which they may ride safely—the degree of
care required is different in the two instances, that is all.

7. ——— : ——— : ———. In the case at bar, there is no doubt, of
defendant's liability to the plaintiff, if the latter's injury was due to
lack of care on the part of its employees. The obligation to exer-
cise this care began, however, when it received the car. It was
then incumbent on it to adopt proper methods to discover whether
it was in a safe condition. It was not liable, under the evidence,
on the ground that it provided an unsafe car.

8. ——— : ———: INSPECTION OF CARS FROM CONNECTING
LINE. The duty devolves on a company receiving cars from con-
necting lines to make exactly the same inspection of them as it
does of its own.

9. ——— : ——— : ———: ORDINARY CARE: PRESUMPTION:
INSTRUCTION. In the case at bar, in view of the testimony of the
plaintiff himself as to the fact that cars with bad floors were often
run in on the track leading to the Car Wheel Company's premises,
to be unloaded by the latter's servants, that portion of the instruc-
tion which charged the jury that he had a right to presume the
defendant railway company had done its duty and furnished a rea-
sonably safe car for him to work in, should have been omitted and
the question referred to the jury as to whether the plaintiff was
in the exercise of ordinary care when he was hurt.

10. ——— : ———: EVIDENCE. Proof that plaintiff was married
and had two children, not admissible. In the case at bar, it was
improper to admit proof that plaintiff was a married man, with
two children.

Appeal from St. Louis City Circuit Court.—*Hon. William
Zachritz*, Judge.

REVERSED AND REMANDED AND TRANSFERRED TO SUPREME
COURT.

### STATEMENT OF THE CASE.

The plaintiff is an employee of the St. Louis Car Wheel Company, whose place of business is in the city of St. Louis. He was injured while engaged in unloading a car containing goods consigned to the car wheel company. The shipment was from Kansas City to St. Louis over the Kansas City, Fort Scott & Memphis Railroad to Nichols Junction in Greene county, and from there to the city of St. Louis over the road owned by the defendant. There were separate waybills, one from Kansas City to Nichols Junction issued by the first mentioned road, and the other from Nichols Junction to St. Louis, issued by the defendant. Each railroad company made separate freight charges, the defendant receiving for its services thirty-three dollars and ninety-five cents. The goods, which consisted of old car wheels, were delivered for shipment by one Jarvis, and were consigned to the car wheel company. The car belonged to the defendant. The foregoing facts are undisputed. The evidence of plaintiff tended to prove that the floor of the car was rotten and contained holes that were hidden by snow and trash; that while plaintiff was engaged in unloading the car, which was standing on a switch on the premises of the car wheel company, he stepped into a hole in the bottom of the car, causing him to fall, and that before he could extricate himself, a car wheel which he was handling rolled back on him and crushed his leg. The defendant's evidence tended to prove that when the car was received at Nichols Junction it was inspected by the officers of the defendant and found to be in good condition, and that the defendant transported the car from thence to Chouteau avenue in the city of St. Louis, the eastern terminus of its road being at that point, where it delivered the car to the Missouri Pacific Railroad Company to complete the transportation, which last named company owned and operated a switch extending upon the premises of the car wheel company.

The defendant railway company denied all liability on the ground that it owed the plaintiff no duty, and it raised the question by an instruction for a nonsuit. The circuit court denied the instruction as to it, but sustained it as to the car wheel company, which was a co-defendant.

The following instruction was given at plaintiff's request:

"The court instructs the jury that if you believe and find from all the evidence in the case, that the defendant, the railroad company, was engaged in transporting over its railroad to and on the premises of the defendant, the car wheel company, for a valuable consideration, cars to be unloaded by said car wheel company on its premises aforesaid, then it became and was the duty of the railroad company to furnish cars in such a state of repair that the said car wheel company and its employees could, with reasonable care and prudence, safely go upon and work upon them in order to do the necessary things for the unloading of the cars. And if you should find that the plaintiff, before the time of the alleged injury, did not know that the car, furnished as aforesaid by the railroad company, was not in a safe condition and repair, he had a right to presume that the defendant railroad company had done its duty and that said car was in such a state of repair and condition as would enable him to do his work with reasonable safety, and he had a right to rely and act upon such presumption."

There was another of similar import given, differing from the one recited, in making both the defendants responsible if the car wheels were being hauled by the railway company and handled by the car wheel company for their mutual benefit and they knew, or by the exercise of reasonable care could have known the floor of the car furnished by the railroad company, in the course of the said business which caused the plaintiff's injury, was defective. Perhaps it had better be set out.

"The court instructs the jury that if you believe and find from all the evidence in the case at the time of the injury complained of by plaintiff he was engaged at work in the employment of defendant, St. Louis Car Wheel Company, in unloading car wheels from a car which had been run in and upon the premises of said car wheel company by the defendant, St. Louis and San Francisco Railroad Company, to be by it, the said car wheel company, unloaded, the said railroad company being engaged in and paid for the hauling of freight to and from said premises for said car wheel company upon cars furnished by said railroad company and then and there to be unloaded upon said premises of said car wheel company, said transportation of freight and unloading of the same as aforesaid being for the mutual benefit of the said railroad company and said car wheel company; and that the plaintiff, at the instance and command of his employer, the said car wheel company, was at the time of the alleged injury engaged in unloading a car as aforesaid furnished by the defendant, the railroad company; and that in the performance of said duty by the plaintiff or others it became and was necessary to stand and move about on the floor of said car; and that said car was then and there in an unsafe condition by reason of the floor having holes and pitfalls therein, and that the defendants knew of the condition of said floor, or by the exercise of a reasonable degree of care and diligence could have known of its condition; and that plaintiff did not know of the condition of said floor until the happening of the injury complained of and that the defect and holes aforesaid were not patent to him, such as would have been disclosed to him had he been ordinarily observant; and that while plaintiff was so engaged as aforesaid in the service of said car wheel company, unloading from a car furnished as aforesaid, then and there loaded with car wheels consigned to said car wheel company, he was hurt, injured and damaged by the floor of said car being

out of repair, and with holes and pitfalls therein as aforesaid, and that the injury occurred without the fault or negligence of plaintiff contributing thereto, then your finding should be for the plaintiff."

*J. T. Woodruff* and *L. F. Parker* for appellant, on motion. for rehearing.

(1) This is an action for damages for personal injuries, alleged to have been caused by the negligence of the defendant. Plaintiff was injured, while in the employ of the St. Louis Car Wheel Company, in unloading car wheels from a car (the property of defendant) which was standing upon a switch to the works of his employer, the switch being the property of the Missouri Pacific Railway Company. This car of wheels had been loaded at Kansas City, upon the tracks of the Kansas City, Fort Scott and Memphis Railway Company, and transported to Nichols Junction by that company, and thence to the defendant's St. Louis terminus, in the western part of St. Louis at Chouteau avenue, by the defendant, and thence to the plant of the car wheel company by the Missouri Pacific Railway Company. It will be noted that the car was selected and furnished by the Kansas City, Fort Scott and Memphis line, upon its own tracks and was delivered to the plant of plaintiff's employer, by the Missouri Pacific line upon its own tracks, and that defendant's only relation, to the shipment, was that of intermediate carrier. When plaintiff came to unload the car wheels, he found that, owing to their great weight, the floor of the car not being sufficiently strong to support them, they had broken through, and by reason thereof he was injured. It may be proper to state here that the reference in the opinion to the defendant as the final carrier, is not supported by the record, as a matter of fact, and is wholly immaterial as a matter of law. (2) So, as

a matter of fact, the statement in the opinion "that the Missouri Pacific Railway Company, that owned a switch running onto the premises of the car wheel company, was employed and paid by the defendant to transfer the car from its track to the premises of the car wheel company," is a misconstruction of the evidence in the case; and even were this shown by the testimony, the conclusion of law stated, that for this reason the defendant was the final carrier, by no means follows, for a carrier, employed to switch a car, is now held to be a "connecting carrier" by all the authorities, and subject to all liabilities as such, both to the shipper and to other carriers. Railroad v. Grocery Co., 55 Kan. 525; 6 Am. and Eng. Ency. of Law (2 Ed.), 605. (3) The opinion of the court, in treating of the assignments of errors relating to the giving of instructions, and the admission of testimony, is equally unsupported. The evidence tended to show that plaintiff knew that cars, having the same defects of which he complains in his petition, were frequently placed upon these tracks for him to unload, and that plaintiff and his co-laborers would in such cases "go around the holes with the wheels" or "take enough force to go over them." Under this state of facts, defendant insists that the court erred in instructing the jury that plaintiff "had a right to assume that said car was in suitable and safe condition for the doing of the necessary labor on the same, necessary to the unloading thereof," as it did in plaintiff's third instruction." (4) The court permitted plaintiff to testify that he had a wife and two children, and the opinion of this court, in overruling the assignment of error based upon this action of the trial court, is as indefensible as in the other respect herein adverted to. It is true, some courts have said that the only possible ground which could be urged for the admission of such testimony was that it might affect the measure of damages, and that it was inadmissible for that purpose; but while the only possible ground which could be urged,

for its admission, may relate to the measure of damages, that is by no means the only ground, or the real ground for its exclusion. The real ground for the exclusion of such testimony is, that it tends to excite the sympathy of a jury, and that a verdict rendered after hearing such testimony, is likely to be based upon such sympathy, rather than upon the legal testimony in the case.

*Thos. B. Harvey* for respondent.

(1) Appellant's car had to be unloaded, and it was its duty to have it in a safe condition for that purpose; and it therefore owed a duty to all persons of that class, whether in the employ of appellant or of some connecting line or of the consignee. And it makes absolutely no difference whether the liability of appellant is placed upon the ground of the contract, express or implied, between the carrier and the consignee; or upon the ground of the carrier inviting the consignee and his employees upon its car to unload the same. The instrumentality furnished by the carrier in discharging its duty toward the consignee, was furnished by the railroad company, and the consignee and its servants had nothing to do with the selection of the car. (2) Appellant employed and paid the Missouri Pacific Railway Company to switch the car from the tracks of appellant to the premises of the car wheel company, where it was left to be unloaded, as was the custom in regard to the cars billed by the Frisco line, and as is shown by the testimony of plaintiff and of witness Lynch. Appellant was the initial and final carrier by the terms of its waybill and the facts of the case. But even if it was an intervening or connecting carrier, yet it would be liable under the authorities cited above. However, a carrier who does not receive the goods from the preceding carrier does not receive the goods from the preceding carrier under

and by virtue of the original contract for through transportation, is not a connecting carrier. Nanson v. Jacob, 12 Mo. App. 125; Nines v. Railroad, 107 Mo. 475; McCann v. Eddy, 133 Mo. 59.

GOODE, J.—The second instruction referred to in the statement, authorized a verdict against the railway company if the plaintiff was hurt on a defective car negligently furnished by it, while engaged in hauling freight to and from the premises of the car wheel company, on cars supplied by the former company, but unloaded by the latter, the business being conducted for the mutual benefit of both. The two instructions were apparently prepared and given from an opinion that the facts bring this case within the scope of Roddy v. Missouri Pacific Railway Company, 104 Mo. 234. A careful comparison of the two cases has led us to the opposite conclusion. After examining several theories on which it was suggested the defendant, in the Roddy case, might be liable, the Supreme Court affirmed the judgment on the ground that Pickle, in whose quarry Roddy was employed, and the Missouri Pacific Railway Company were engaged in a joint undertaking for mutual profit, pursuant to a contract they had made; that each had engaged to perform a particular part of the work necessary to carry out the common purpose and was under an obligation to the other contracting party and his employees to exercise ordinary care in its performance; that selecting and providing cars was exclusively entrusted to the railway company which was, therefore, responsible if it carelessly provided unsafe ones.

The facts were, that Pickle owned extensive quarries of merchantable stone off the defendant's main line. He desired to ship it to market and the railway company desired to haul it; so they entered into a contract by which the latter built a spur from its main line to the quarries, and tracks from the spur

into the quarries. These were paid for by Pickle. The defendant left cars convenient to the private tracks, which Pickle's employees would move to the quarries; when loaded the railway company took them out. Roddy was injured while shoving some empty cars on account of a defective brake.

The instructions in the present case were modeled after those recited in the opinion in that one. But there was no such contract shown to exist here between the defendant railway company and the car wheel company; in fact no contract at all. Their relation was the ordinary one of carrier and consignee, while the arrangement in the Roddy case was exceptional—an independent enterprise between the Missouri Pacific Railway Company and Pickle, based on an agreement by which the duties of each were assigned and engaged to be properly executed. The railway company was held answerable to one of Pickle's servants because he was injured by its failure to do carefully its part. The contract here was between the Kansas City, Fort Scott & Memphis Railroad Company and the consignor Jarvis—perhaps there was one too between the St. Louis & San Francisco Railway Company and Jarvis. The bill, or bills, of lading are not in evidence, so this point is obscure. But we find no contractual relation between the last-mentioned railway company and the St. Louis Car Wheel Company—much less a joint enterprise for mutual profit, unless every business concern and every carrier who hauls freight to it are prosecuting a joint enterprise, which will hardly be claimed. The important fact that the car was furnished by the Kansas City, Fort Scott & Memphis Railroad Company must not be overlooked. It widely separates this action from Roddy's. The car belonged to the St. Louis & San Francisco line, but we regard that circumstance as immaterial for these reasons: it had been out of the owner's charge for nearly two weeks when loaded with the car wheels shipped by Jarvis, and maybe the defendant com-

pany would not have selected it for such freight if it had provided the car on which they were to be carried. If the car was in bad order, as the plaintiff's evidence tended to prove, loading the wheels on it was a negligent act on the part of the company which did it. The instruction quoted assumes that it was furnished by the defendant railway company, which the undisputed evidence disproves. The St. Louis & San Francisco Railway Company ought not to be held liable to the plaintiff for negligently providing a bad order car, which it clearly did not provide at all. Its responsibility must be found elsewhere—in failure to use ordinary care to discover the car's condition at the point of transfer, or while in its possession up to the time of the accident. In so far as the defendant railway undertook to furnish cars for the car wheel company's freight, it was bound to use care to furnish good ones. But there was no general undertaking of that kind proven or sought to be. The defendant was one of several common carriers that brought carloads of wheels to the car wheel company—sometimes, maybe always, it would get what it delivered from other lines on cars supplied and loaded by them. The instructions were misleading as tending to produce an impression that the defendant had agreed or undertaken to furnish the cars on which wheels were hauled and delivered to the car wheel company and was, therefore, bound to take care that they were safe, which obligation the plaintiff had the right to presume was performed.

While we think, then, the Roddy case is inapplicable, we totally dissent from the proposition ably pressed by appellant's counsel, that it is not liable in any event to the respondent because it owed him no duty. There was no contract between them, it is true, but none was necessary to impose a duty towards him on the appellant—the same duty it owes to all persons whose avocations require them to go on its cars in connection with its carrying business; namely, to have them in such

repair that they may be used with reasonable safety. What means it ought to employ to this end and when they should be employed, depends, always, on the surrounding circumstances. If it provides a car to receive freight, it must use care in advance to have the car safe; if it receives one from a connecting line, it must use that degree of care which is compatible with efficient service and exercised by well-managed railway companies generally, to see that it is safe or set it out if it is not. These obligations and responsibility for non-compliance with them, are based on the just and reasonable requirement that a party providing an appliance, machine, vehicle, place or structure of any kind, to be used in his occupation and with the intention that people with whom he has business and their help, shall work with, about or on it, must exercise prudence to see that the thing he furnishes is not so imperfect or out of order as to cause injury to persons thus employed, while themselves observing due care. It is often said there is an invitation by the owner or furnisher of a contrivance to every one to use it who has occasion to do so in the performance of a task connected with the purpose it was designed to subserve; and this view is both sound and firmly established. O'Donnell v. Patton, 117 Mo. 13; Moore v. R'y Co., 84 Mo. 481; Carraway v. Long, 7 Mo. App. 595; Hartman v. Muchlebach, 64 Mo. App. 565; Heaven v. Pender, L. R. 11 Q. B. Div. 503; Elliott v. Hall, L. K. Q. B. Div. 320; Moon v. R'y Co., 46 Minn. 106; Olson v. Fuel Co., 77 Minn. 528; Hoosier Stone Company v. R'y Co., 131 Ind. 575; Glenn v. Winters, 40 N. Y. S. 659; R'y Co. v. Merrell, 61 Kan. 671; Stewart v. Harvard College, 12 Allen 58; Ice Co. v. Ericson, 39 Mich. 492; Conlon v. R'y Co., 135 Mass. 195. In all these and similar cases, the theory of responsibility is identical, though sometimes differently phrased; one who carelessly furnishes dangerous premises or appliances to be used by others in transacting business with him or business con-

nected with his own, is liable to any one harmed thereby while free from contributory negligence.   There can be no difference in principle whether the thing which caused the accident was real or personal property, if the injured party was doing with it at the time, what the owner or furnisher intended he should. There was a marked distinction between this case and Heizer v. Mfg. Co., 110 Mo. 605, and its kind, where the original maker, or vendor, of the mischievous article, was not employing it in his own business but had parted with all dominion over it, in which instances his liability extends no further than the party with whom he contracted.   Sometimes the doctrines of those cases may have been stretched too far.   We apprehend that if the defendant in the Heizer case had owned the machine at the time of the accident and was permitting it to be used in its own business as, for instance, in exhibition of its working efficiency, the manufacturing company would have been liable.

Then, too, a railway company as the beneficiary of franchises conferred by the State, among which is the right to take tolls for transporting freight, is under an obligation to the public to transport it in cars on which people may work safely, as well as passenger coaches on which they may ride safely—the degree of care required is different in the two instances, that is all.   This principle was expounded in the exhaustive opinion by Judge THOMPSON in Lamert v. Laclede Gas Light Co., 14 Mo. App. 236, and was recognized in Winterbottom v. Wright, 10 M. & W. 107, an authority much relied on by the appellant. That case contained this element in common with Heizer v. Manufacturing Co., supra, and others, that the defective coach by which the plaintiff was hurt, was supplied by the defendant under his contract with the Postmaster General to a third party and while the latter was operating it a passenger was injured.

We have no doubt of the defendant's liability to the plaintiff, if the latter's injury was due to lack of care on the part of

its employees.    The obligation to exercise this care began, how-
ever, when it received the car.    It was then incumbent on it to
adopt proper methods to discover whether it was in a safe con-
dition.    It was not liable, under the evidence, on the ground
that it provided an unsafe car.

We come then to inquire whether the submission of the
case on that hypothesis was prejudicial error?    The car, when
received by the defendant company, was loaded.    It is at once
apparent that an inspection of it in this condition would not be
so apt to detect holes in the floor as when it was empty.    It is
true, the duty devolves on a company receiving cars from con-
necting lines to make exactly the same inspection of them as it
does of its own.    Gutridge v. R'y Co., 94 Mo. 468.    But the
circumstances under which the inspection may be made in either
case must be considered and allowance made for them.    There
is much more time for a terminal inspection; besides, it is im-
possible to inspect a loaded car as thoroughly as you can an
empty one, particularly with reference to the condition of the
floor.

We conclude, then, that a greater burden was imposed on
the defendant by the instructions, to acquit itself from respon-
sibility, than was just.    A railway company is bound by law to
take loaded cars from other lines and transport them.    While
its liability for goods lost in transit is the same whether the loss
be due to deficiencies in its own cars or foreign ones, the rule
seems to be otherwise as to injuries to persons, other than pas-
sengers, caused by defects.

In Olson v. Fuel Co., supra, where the question of the
responsibility of connecting carriers for a defective car trans-
ported over their lines, is gone into, it was ruled that if the car
is "suitable and safe when delivered to the connecting carrier,
the party making the delivery has exercised due care in the
premises.    He is not bound to follow it to its destination and

Sykes v. St. L. & S. F. Ry. Co.

there inspect and repair it if found defective." That was a
controversy like this: an employee was injured by a bad-order
car.

By parity of·reasoning, it would seem that a carrier who
unwittingly receives a defective car from another line, acquits
itself of responsibility if it uses ordinary care to discover its con-
dition and avoid injuries to persons therefrom when it receives
it and after it is in its possession. We hold, therefore, that the
investigation, in the present case, should be confined to the
question, whether or not the defendant railway company exer-
cised ordinary care after it received it from the Kansas City,
Fort Scott & Memphis Railroad Company, which originally
furnished it.

The fourth instruction, given at plaintiff's request, told
the jury that if the defendant undertook to inspect the car at
Nichols Junction, where it received it, or other points on its
line, it would be responsible for any negligence its inspectors
were guilty of in the performance of their duty. This was
correct and in harmony with the views above expressed.

In view of the testimony of the plaintiff himself as to the
fact that cars with bad floors were often run in on the track
leading to the car wheel company's premises, to be unloaded by
the latter's servants, that portion of the instruction which
charged the jury that he had a right to presume the defendant
railway company had done its duty and furnished a reasonably
safe car for him to work on, should have been omitted and the
question referred to the jury as to whether the plaintiff was in
the exercise of ordinary care himself when he was hurt. True,
he says the defective cars were mostly those of the Burlington
line, or that that line had the worst cars. We might not be
willing to reverse the case for this error alone, but on a retrial
it should be avoided. The Roddy case was reversed for just
such a vice in the instructions. So, too, it was improper to

admit proof that the plaintiff was a married man with two children. That testimony was objected to by the defendant and an exception saved. It was incompetent. The admission of similar evidence was condemned, although the court told the jury not to consider it in making their verdict, and especially not to consider it in fixing the amount of the verdict they might find for the plaintiff. Stevens v. R'y Co., 96 Mo. 207. Such a caution was not given in the present case.

The judgment is reversed and the cause remanded. All concur; Judge *Bond* in the reversal only, because he thinks the remand of the cause contrary to the decision in the first paragraph of Roddy v. Mo. Pac. R'y Co., 104 Mo. 234. He, therefore, asks that the cause be certified to the Supreme Court for final determination, which is accordingly done.