CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. LEWIS.

Opinion delivered March 11, 1912.

1.  CARRIER—DUTY IN DELIVERY OF FREIGHT.—It is the duty of a carrier to make delivery of freight to consignees, and for that purpose to exercise ordinary care to furnish cars in such repair that they could be unloaded with reasonable safety to those engaged in that work. (Page 102.)

2.  SAME—DUTY OF DELIVERING CARRIER.—The duty to exercise ordinary care to make a freight car reasonably safe for those engaged in unloading it rests upon a delivering carrier, though it received the car in a defective condition, and had nothing to do with it except to switch it a short distance over its tracks and deliver it to the consignee. (Page 102.)

3.  SAME—WHEN NEGLIGENCE FOR JURY.—Where the facts in proof warranted an inference of negligence on the part of the delivering carrier in failing to furnish a car that was reasonably safe for those engaged in unloading it, the question of negligence was for the jury. (Page 102.)

4.  SAME—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.— Whether a person engaged in unloading a car was negligent in attempting to continue unloading after he discovered a hole in the floor of the car is a question for the jury, as it can not be said as matter of law that it was so obviously dangerous as to constitute negligence. (Page 103.

5.  SAME—ASSUMED RISK—WHEN INAPPLICABLE.—Where plaintiff, while
    engaged in unloading a car for his employer, was injured by reason
    of a defect in the car which he discovered after he had commenced to
    unload, he was not bound to discontinue his work and will not be held
    to have assumed the risk from such defect unless the danger was so
    obvious that it was negligence to proceed.    (Page 103.)

Appeal from Logan Circuit Court, Southern District; *Jeptha H. Evans*, Judge; affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh*, for appellant.

1.    Appellant can not be held liable under the proof. Appellee's complaint that no notice that the car was in bad order was posted on the car or given to him or to the consignee is without merit, because he himself discovered the hole in the car and knew that it was such a hole as one might step into and get hurt.    A railroad company is not an insurer of the safety of persons who come upon its premises on business with the company.    If such a person discovers a defect and appreciates the danger therefrom, yet continues to use the premises and receives an injury by reason of such defect, the company is not liable.    63 Ark. 427; 98 Ark. 462; 23 N. E. 233; 30 N. E. 580; 19 Atl. 939; 49 Fed. 690; 25 N. E. 354; 45 Pac. 310; 49 N. Y. Supp. 341; 85 Ark. 460.

2.    Under the facts in this case appellant was under no duty to inspect the floor of the car in order to ascertain whether or not it was in a safe condition for persons to go into and unload it.    60 Ill. App. 444.

*Carmichael, Brooks & Powers*, for appellee.

1.    As a matter of law, appellee was entitled to the same protection against defects as the owner of the contents of the car.    As to the rights of persons having business on the premises of a railway company, see 117 S. W. 1066; 55 Ark. 432; 48 Ark. 491; 69 Ark. 489; 89 Ark. 122; 3 Elliott on Railroads, § 1265c, p. 461.    And as applied to persons engaged in unloading cars see 77 S. W. 726, 727; 88 Mo. App. 193; 85 Ark. 463; 108 S. W. 841; 112 S. W. 1017; 132 Mo. App. 687; 100 S. W. 870; 30 Ry. L. Rep. 1193; 114 S. W. 425; 110 S. W. 135; 112 S. W. 177; 107 S. W. 868.

2.    Appellant was under the duty to inspect the car and to exercise ordinary care to see that it was in safe condition for the use of employees or other persons having business with

the company. 82 Ark. 378; 101 S. W. 738; 100 S. W. 958; 93 S. W. 684; 77 S. W. 728. And the fact that appellant handled the car in switching service only, if a fact, did not absolve it from this duty of inspection. Labatt on Master and Servant, 382, 383; 55 Kan. 525; 202 Mass. 491; 53 Ark. 347; 18 Fed. 304.

McCULLOCH, C. J. The plaintiff, John S. Lewis, while unloading a car of tiling at Hartford, Arkansas, received personal injuries on account of an alleged defect in the car, and sues the defendant, the Chicago, Rock Island & Pacific Railway Company, which was the delivering carrier, to recover the damages.

The carload of tiling was shipped to Hartford, consigned to Baldwin & Smith, a firm of merchants at that place, and came over the Midland Valley Railroad. In order to make delivery to the consignee, the car was turned over to the defendant company, and by its servants transported over its main track and side track, a distance of about a mile, and placed on a side track to be unloaded. The defendant thus became the delivering carrier.

There was a hole in the bottom of the car, about eight inches wide and twenty or twenty-four inches long. The hole was covered by the heavy tiles, which were stacked in the car in tiers, and the defect could not be readily discovered except by examining the bottom of car from underneath or after moving the tiles. Plaintiff is a drayman, and was employed by the consignees, Baldwin & Smith, to unload the car and deliver its contents at their place of business in Hartford. It is shown to have been customary there to deliver freight in carload lots in this manner, that is to say, for the car to be conveniently placed on a side track and for the consignee to unload same. The plaintiff and his fellow workmen proceeded to unload the car, and, after having taken out several tiers of the tiling, discovered the hole in the bottom of the car, when it became thus exposed by the removal of the tiling which hid it from view. After they had unloaded all but the last tier of tiles, while plaintiff was rolling one of the heavy pieces toward the door, it jostled or "teetered," as expressed by the witnesses, and, on account of its heavy weight and movement, it caused plaintiff's foot to slip, and before he could recover his

balance, he stepped in the hole, and the heavy piece of tiling rolled down across his leg and broke it.

The evidence shows that one of defendant's car inspectors, whose duty it was to inspect the outside and running gear of cars, but not the inside of cars, in inspecting the running gear of the car, discovered the hole, but did not report it, that not being within the line of his duty, and no notice thereof was given to the plaintiff or any of his associates, or to the consignees.

There is no conflict in the statements of any of the witnesses, though different inferences of fact may be drawn therefrom as to the questions of negligence and contributory negligence.

The jury returned a verdict in favor of plaintiff, assessing his damages in the sum of $500, and defendant appealed.

The defendant denied that it was guilty of negligence in any respect, and also pleaded contributory negligence and assumption of the risk on the part of the plaintiff.

The question of negligence in failing to give warning to the plaintiff concerning the hole in the car passed out of the case, for the reason that plaintiff actually discovered the hole before his injury occurred, and the failure to warn him could not have been the cause of the injury.

It was the duty of the defendant to make delivery of freight to the consignees, and where, in accordance with the custom or for the convenience of both parties, the delivery is made, as in this case, by placing the car on a side track, to be unloaded by the consignees, an obligation rested on the carrier to exercise ordinary care to furnish cars in such repair that they could be unloaded with reasonable safety to those engaged in that work. 3 Elliott on Railroads, § 1265c; *Cincinnati, N. O. & T. P. R. Co.* v. *Vaught,* 78 S. W. (Ky.) 859; *Sheltrawn* v. *Michigan Central R. Co.,* 128 Mich. 669; *Sykes* v. *St. Louis & S. F. Rd. Co.,* 88 Mo. App. 193; *Roddy* v. *Missouri Pacific Ry. Co.,* 104 Mo. 234, 12 L. R. A. 746.

This duty rested upon defendant as the delivering carrier, even though it received the car in this condition from another carrier, and had nothing to do with it except to switch it a short distance over its tracks and deliver it to the consignee. It was bound to exercise ordinary care to make the car reasonably safe for those engaged in unloading it; and whether failure to

discover the hole in the car and repair it constituted negligence was peculiarly a question for the determination of the jury. The facts were undisputed, and warranted an inference of negligence which the jury had the right to draw from them.

We are also of the opinion that it was a question for the jury to determine whether or not plaintiff was guilty of negligence in attempting to continue unloading the car after he discovered the hole. It does not constitute negligence on his part unless the presence of the hole was so obviously dangerous, under the circumstances, that a person of ordinary prudence would not have continued work, and it can not be said as a matter of law that it was so obviously dangerous as to constitute negligence. In determining that question, it was within the province of the jury to consider the degree of danger to which plaintiff exposed himself, and the question whether he should not have laid a plank temporarily over the hole while working there. But, as before stated, that was a question for the jury, and we can not say, as a matter of law, that he was guilty of contributory negligence in continuing to work without covering the hole or demanding of the carrier's agent that that be done.

It is insisted that the plaintiff assumed the risk of the danger by continuing the work after discovering the presence of the hole, and that on this account he should not be permitted to recover. While the danger from the exposed hole was not so obvious that we should say, as a matter of law, that a prudent man would not have continued work, with knowledge of it, yet whatever danger existed was patent to a person of ordinary intelligence who knew the hole was there, and the plaintiff must be deemed to have appreciated it; and if this was a case in which the doctrine of assumed risks is applicable, we would hold, as a matter of law, that he assumed the risk. The doctrine of assumption, or, as sometimes termed, acceptance of the risk, is founded on the maxim, *"volenti non fit injuria."* It is generally applied as a part of the law of master and servant, but it is a distinct principle of the law which may be otherwise applied in some instances. *St. Louis & S. F. Rd. Co.,* v. *Fritts,* 85 Ark. 460; 5 Thompson on Negligence, § 6274; *Roddy* v. *Missouri Pacific Ry. Co., supra; Glass* v. *Colman,* 14 Wash. 635.

The doctrine of assumed risks is based upon voluntary exposure to a known danger, but we need not enter into a further discussion of this principle, for the reason that we do not think this is a proper case for its application. As before stated, it is based entirely upon voluntary exposure to danger, and can only be applied in cases where the person may reasonably elect whether or not he shall expose himself to it. The exposure may be without physical coercion, yet the circumstances may be such as would render it unreasonable for a person to exercise his election not to proceed in that way. Therefore, if it be conceded that the plaintiff, with notice of the defect in the car before he began to unload it, assumed the risk, as a matter of law, by proceeding with the work, yet such is not the state of facts in this case. If he had such notice before he commenced unloading the car, it might be deemed reasonable to hold him to an election, either to refuse to accept the delivery of the goods from the defective car or to take the risk himself of unloading it if he preferred to do so while it was in that condition; but it would not be fair to apply that rule after he had proceeded with his work, unconscious of the defect, and discovered it while in the midst of his work of unloading. He was not bound, under these circumstances, to cease working because of a known defect, which it can not be said was so dangerous that a prudent man would not proceed. He was not bound to break up his task in that way and to unload the car by piecemeal; and because he proceeded, under those circumstances, to complete his task, it can not be said that he assumed the risk. In other words, it is not reasonable to expect him, in that state of the progress of his work, to decline to proceed further, unless the danger was so obvious that it was negligence to proceed, and it therefore can not be said that self-exposure to the danger under those circumstances was voluntary in the sense that he must be deemed in law to have accepted the risk.

The rulings of the court in giving and in refusing instructions of law requested were not inconsistent with the views we have expressed, and the case was properly submitted to the jury upon evidence which is legally sufficient to sustain the verdict.

Judgment affirmed.

KIRBY, J., dissents.