ROBERT E. NOBLE *vs.* PARK ENTERPRISES, INC.

Worcester.   December 10, 1942. — March 31, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Negligence*, Skating rink, Fan.

A finding of negligence of the proprietor of a skating rink toward a boy present there as an invitee was warranted by evidence that, in a dimly lighted corner of the rink open to and used by patrons, an electric fan partly installed in a window accessible to the boy had been left with its blades unguarded and that, when the boy attempted to look out of the window without having seen the fan, his hand was cut by the blades which then were turning.

TORT. Writ in the Superior Court dated August 17, 1939. The action was tried before *Giles*, J.

*W. A. Garrity*, for the defendant.

*F. J. Doran & J. L. Haley*, for the plaintiff, submitted a brief.

DOLAN, J. This is an action of tort to recover compensation for personal injuries sustained by the plaintiff, who is a minor. The case was tried to a jury. At the close of the plaintiff's evidence the defendant rested and moved for a directed verdict in its favor. The motion was denied subject to the defendant's exception and the jury returned a verdict for the plaintiff. The defendant then moved for entry of verdict in its favor under leave which had been reserved. That motion was also denied and the defendant duly excepted.

There was evidence that at the time of the accident the defendant was operating a skating rink in White City Park in Shrewsbury. One Kender was manager of the rink. The rink was rented to the Homer Gage Jr. Drum Corps for its use on November 15, 1938, the day upon which the accident happened. Kender testified in part as follows: On the day preceding the accident a ventilating fan had been partly installed at the northeast corner of the rink by Kender and "a man from Providence, who came up to the rink with Mr. Berger, the owner of the rink." The fan, which had been used during the summer in another building in the park, was installed by removing a window frame, and by using another frame into the middle of which the circular ventilating fan was inserted. The space around the fan was boarded up, and the fan was attached to the boards which were nailed to each side of the frame. When the fan was attached to the frame its eight or twelve blades were exposed to the inside of the rink. An electric cord or cable consisting of two wires twelve to fourteen feet long was attached at one end to the motor of the fan. The two wires projecting from the other end of this cable were bare, and the cable was wound up and hung upon a nail "beside the fan, out of reach." All that remained to complete the work was to "put more wood around the frame," to place a guard in the shape of a wire cage over the fan, and to have the park electrician install a plug and connect the fan. Kender did not intend to complete the work himself. It was not within his province to "install a plug or connect the fan." That was the duty of the park electrician, and

the work was not completed at the time of the accident.

The window in which the fan had been inserted was in a corner of the rink where benches had been placed upon which skaters might rest. A step ladder and plank which had been used in installing the fan on the day before the accident occurred had been left by Kender on one of the benches in front of the fan. The top of the benches was eighteen inches above the floor. The electric outlet by means of which the fan was to be operated was about eight feet above the floor. "There was a two-inch pipe railing about four feet high, all around the rink and this pipe at the corners of the rink cut diagonally from the wall to wall, starting at a point ten feet from each side of the corner, so that it blocked this corner [where the fan was located] off." The pipe railing ran below the electric outlet in question. The "fan was so located that in order to reach it, one had to enter the area behind this iron pipe," but it was in this area that the benches had been constructed upon which the skaters could rest. To reach the benches it was necessary to step over a baseboard about eight inches high and to go under the pipe railing. The window frame in question was fifty-eight inches from the floor.

There was also evidence which would have warranted the jury in finding the following facts. At the time of the accident the plaintiff was eleven years of age and "59¾ inches tall." His mother had bought him a ticket for the drum corps party, and he had driven to the rink in his father's automobile, which was then parked in an area approximately opposite the window that had been removed in installing the fan. The plaintiff's father was the manager of the drum corps. The plaintiff joined in the party and skated "intermittently." There were one hundred fifty to one hundred seventy-five people present. At about 10:40 P.M. his father told him that it was time to go home, but gave him permission to skate around once more. He started skating and "came to a stop" at the corner of the rink where the benches were placed. The corner was

dimly lighted. He went to one of the four windows located there "to see if it was still snowing." This window looked like the other windows in the area. He put his right hand on the window "where the glass was supposed to be . . . heard a ping like a saw; . . . looked at his hand . . . saw it was cut and skated over to his father [who was talking with Kender]; . . . he didn't know what had happened to him; . . . he saw something turning around, after he was cut; after he heard the ping; . . . he didn't hear a fan, and . . . didn't see a fan" until after he was injured. Music was being played at the time and there was a "steady din from the skaters." He "didn't climb upon the bench in front of the fan" and "didn't see a ladder in the area." After he was injured he discovered that there was a fan in the area and that its blades stopped turning and started again. About five seconds before the plaintiff "skated up" to his father and Kender· "with his hand bleeding" Kender heard a metallic sound coming from the corner of the rink where the fan was located. Kender put a tourniquet on the plaintiff's arm and he was taken to an hospital where the middle finger and a portion of the ring finger of his right hand were amputated.

Kender testified that, after the plaintiff was injured, he discovered that the ends of the wire connected with the fan had been inserted, by someone without authority, into the socket of the connection used for a spotlight, from which the bulb had been removed, also without authority; that the spotlight had been operating during the earlier part of the evening; and that the first time he knew that the fan was operating was after the accident. Kender also testified that he did not see anyone climb up on the pipe rail or use the ladder that night.

The sole contention of the defendant is that the evidence was not sufficient to warrant a finding that it was negligent. We do not sustain this contention. The plaintiff was a business invitee of the defendant, and under the familiar rule it was bound to use due care to keep the premises provided for the use of its patrons in a reasonably safe condition, and to warn them of any dangers that might

arise from such use, which were not likely to be known to the patrons, and the existence of which the defendant knew or ought to have known. *Heina* v. *Broadway Fruit Market, Inc.* 304 Mass. 608, 610, and cases cited. In the present case the jury could have found properly that the defendant had left an unguarded, dangerous instrumentality, the blades of which extended into the rink, in a dimly lighted corner of the rink open and accessible to the skaters and resorted to as a resting place by them. They could have found that the defendant's manager, Kender, had left the fan in this dangerous condition with knowledge that on the evening of the following day a large group of youthful persons was to attend the drum corps party at the rink. The jury were not obliged to believe the testimony of Kender or to draw the inference that some one for whose conduct the defendant was not responsible had connected the fan, through the cord or cable, with the electric outlet.

The plaintiff was not required to exclude all other possibilities as to the cause of the injury, but was only required to show by evidence a greater likelihood that his injuries came from acts of negligence for which the defendant is responsible rather than from a cause for which it is not liable. *Rocha* v. *Alber*, 302 Mass. 155, 157, 158, and cases cited. *Eagles* v. *National Plate & Window Glass Co. Inc.* 312 Mass. 463, 465. We are of opinion that it cannot be said rightly as matter of law that the plaintiff has not made that proof. See *Howlett* v. *Dorchester Trust Co.* 256 Mass. 544; *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340; *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 196, and cases cited; *Dunbar* v. *Ferrera Bros. Inc.* 306 Mass. 90; *Bennett* v. *Cohen*, 310 Mass. 714, 715; *Pittaluga* v. *Diamond*, 261 App. Div. (N. Y.) 850.

*Exceptions overruled.*