This is a suit for damages under article 2315 of the Revised Civil Code, in which the plaintiff, Jessie Franklin, alleges that on February 13, 1940, while acting as the foreman of a labor gang employed by Hogsett Company in the unloading of a *Page 126 
box car, he was injured when the door of the car became detached from its fastenings and fell upon him as he was passing by.
The Illinois Central Railroad Company and the City of New Orleans as the operator of the Public Belt Railroad, which we shall hereafter refer to as "Public Belt", were made parties defendant. Plaintiff claims $36,676 as damages for physical injuries, loss of earnings, etc., which he alleges resulted from the accident.
The General Accident Fire and Life Assurance Corporation, Ltd. of Perth, Scotland, the compensation insurance carrier of the plaintiff's employer, intervened as against the Public Belt only, claiming reimbursement of compensation paid to Jessie Franklin under the workmen's compensation act, Act No. 20 of 1914, in the sum of $596.23, and for such further sums as it may be held liable.
The alleged responsibility of both the Illinois Central Railroad Company and the Public Belt is based upon the contention that it was their duty to inspect the freight car and that a proper inspection would have revealed the defect in the door which fell upon the plaintiff.
The defendant, Illinois Central Railroad Company, defended upon the ground that it was its duty to unload the box car and that it contracted with plaintiff's employer, Hogsett Company, whose insurance carrier paid plaintiff compensation, and that under the circumstances, it was, in effect, Franklin's employer, consequently the payment of compensation by Hogsett Company, its subcontractor, relieved it of all further responsibility. Other defenses were made by the Illinois Central Railroad Company, including a call-in-warranty against the Public Belt, which we need not notice because the case against that railroad is abandoned, all parties concerned being convinced that the defense mentioned is valid. See Gaiennie Co. v. Chisolm, 3 La.App. 358, construing Sections 6 and 34 of the Workmen's Compensation Act, Act No. 20 of 1914.
The Public Belt answered denying that it was guilty of any negligence in inspecting the box car and averring that if there was any defect in the door of the box car it was latent. In the alternative, it pleaded contributory negligence.
There was judgment below dismissing plaintiff's suit and the petition of intervention. Plaintiff and intervenor have appealed to this court.
The case was very ably argued and elaborately briefed and covered many pages of transcript, however, its decision lies within a narrow compass. What kind of inspection was the Public Belt obliged to make and did it, in fact, make such inspection.
The box car belonged to the Lehigh Valley Railroad Company and was marked "L.V. No. 5388". It had been loaded with tin plate by the Inland Steel Corporation at Indiana Harbor, Indiana, delivered to the Indiana Harbor Belt Railroad Company which, in turn, delivered it to the Illinois Central Railroad Company for transportation to New Orleans, Louisiana, and by the latter railroad to the Public Belt to be transported to the Market Street Wharf for unloading, the tin plate being consigned to the Delta Lines, otherwise known as the Mississippi Shipping Company and destined ultimately for shipment to Montevideo, South America. The waybill obligated the Illinois Central to unload the box car at shipside and Hogsett Company was employed by it for that purpose. The seals were broken when the car reached the Market Street Wharf and the door opened in the customary way, by sliding it along two rails, one at the top and the other at the bottom. It fell an hour and a half later without any apparent reason while at rest on the supporting rails and hit plaintiff, who was passing by.
The doctrine of res ipsa loquitur is invoked. The following quotation from the case of Lykiardopoulo v. New Orleans C.R. Light Power Co. et al., 127 La. 309, 310, 53 So. 575, 576, Ann.Cas.1912A, 976, is cited by counsel as explanatory of that doctrine: "In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself — res ipsa loquitur — that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur."
Granting that this doctrine has application here, the most that can be said *Page 127 
is that a presumption of negligence on the part of the Public Belt arises from the fact that the car door fell when the car was in its possession as the ultimate or delivering carrier under circumstances which ordinarily it would not have done so, but this presumption is not juris et de jure, and will yield to proof of the absence of negligence on its part, which is another way of saying that the liability of the Public Belt depends upon whether it made a proper inspection of the box car.
We are referred to the case of Chicago, R.I. P.R. Co. v. Lewis, 1912, 103 Ark. 99, 145 S.W. 898, 899, in which it was held that the delivering carrier, who had transported a freight car belonging to another railroad for a distance of only one mile in order to deliver it to a consignee, was liable for a defect in the floor of the car which was covered with tiling with which the car was loaded, the court saying: "It was the duty of the defendant to make delivery of freight to the consignees; and where, in accordance with the custom or for the convenience of both parties, the delivery is made, as in this case, by placing the car on a side track, to be unloaded by the consignees, an obligation rested on the carrier to exercise ordinary care to furnish cars in such repair that they could be unloaded with reasonable safety to those engaged in that work. * * * This duty rested upon defendant as the delivering carrier, even though it received the car in this condition from another carrier, and had nothing to do with it, except to switch it a short distance over its tracks and deliver it to the consignee".
This case goes very far in maintaining the liability of a delivering carrier for defects in the rolling stock belonging to others and handled by it. We believe that the rule announced finds no support in the majority of jurisdictions. However that may be, it is certainly not the law in Louisiana.
The box car "L.V. No. 5388" was inspected by the Inland Steel Corporation in its yards at Indiana Harbor, Indiana, where the shipment originated. It was then delivered to the Indiana Harbor Belt Railroad Company for transportation to Markham, Illinois, for delivery to the Illinois Central Railroad Company to be carried to New Orleans, Louisiana. The Indiana Harbor Belt Railroad Company inspected the car twice, once in Indiana Harbor and once in Gibson, Illinois. The Illinois Central Railroad Company inspected the car at Markham, Illinois, Memphis, Tennessee, McComb, Mississippi, and finally in New Orleans at Stuyvesant Docks. It was then placed on what is known as the Illinois Central interchange and delivered to the Public Belt, which also inspected the car. All of these examinations failed to reveal any defect in the door of the car and none developed during the 700 mile journey from Indiana Harbor, Indiana, to New Orleans, Louisiana.
Counsel for the Public Belt strenuously argues that the car, at the time of the accident, was not in its possession, but in that of the Illinois Central Railroad Company, which had undertaken to unload it. However, the car was on the tracks of the Public Belt and could only be moved by it and while the Illinois Central and its agent, Hogsett Company, had the exclusive right to unload the car and to break the seals, it may well be that the car was in the possession of the Public Belt. It is unnecessary, in the view we take of the case, to decide that point.
We return now to the ultimate question in the case which at the outset we declared to be the sufficiency of the inspection given by the Public Belt. Joseph Coates inspected the car for the Public Belt. Mr. Coates described his inspection as follows: "Well, first thing you do, you come up to the car and you look at the end nearest you, and the sides * * * take the car number and initials, * * *. Well, you inspect the wheels and look at that side of the car nearest you, the end where the car number and initial is, walk down to look at the end carriage look at the door rail and the seal. That part of the door you can see from the ground, up the side of the car and on down like that, and when you come back like that, you get on the top and inspect the safety * * * the running board and the top portion of the doors and the top of the car, to see that it is in good mechanical condition".
When asked how many cars he inspected in a day, he replied from ten to sixty.
No one was able to give a reason for the accident or tell why the door fell. There is much testimony in the record as to the manner in which the door operated. We are not sure that we understand all of it. We gather, however, in a general way that the door operates on rollers placed on iron rails at the top and bottom; that it is *Page 128 
held in position when closed by a handle or lever which, when extended, releases the door in order that it may be opened. However that may be, we are convinced that whatever was wrong with the door, it could not have been discovered by any ordinarily careful inspection. As we have said, the box car was inspected seven or eight times by the several railroads which handled it from the time it left Indiana Harbor until it reached the Market Street Wharf in New Orleans. It had traveled 700 miles and had been submitted to all these inspections without revealing any defect. It must be borne in mind that the Public Belt had no authority to break the seals and operate the door of the car which, in our opinion, was the only way which the defect could have been discovered. Moreover, such an inspection would be unreasonable and extraordinary.
In Jacob v. Illinois Cent. R. Co. et al., 1913, 133 La. 735, 63 So. 306, 308, where this particular defendant was involved, the Supreme Court of Louisiana in considering the liability of the Public Belt in a similar situation, held that it was not liable for an accident due to a defect in a flat car which had been subject to its routine inspection. In that case Frederick Jacob, a day laborer, who was in the employ of a stevedoring firm and engaged in unloading heavy pieces of timber from two flat cars belonging to the Cincinnati, New Orleans Texas Pacific Railway Company, which had been brought to New Orleans by the Illinois Central Railroad Company and delivered to the Public Belt in New Orleans for delivery to the consignee, was killed when a sill of one of the flat cars gave way causing the timber to break the stanchions that held it in place, with the result that the timber fell on Jacob. The court, after holding that the breaking of the sill was the cause of the accident, said:
"The break in the sill makes it quite evident that the sill was defective at that point. And this is further shown by the testimony found in the record.
"It is argued on behalf of plaintiff that it was the duty of the city of New Orleans, through its Belt Railroad Commission, to have inspected the cars in question and to have discovered the faulty condition of the sill of one of them, and that it was at fault in not having made such proper inspection and in not having rejected the car when delivered to the Belt Road by the Illinois Central Railroad Company."
In disposing of this contention, the court said:
"It is the duty of the owners of cars to examine them carefully with the view of seeing that they are safe in all their parts. It is also the duty of a railroad company which receives cars from another company to inspect the same with the view of ascertaining their condition. * * *
"The record is silent as to when and how the Cincinnati, New Orleans Texas Pacific Railroad Company, the owner of the car in question, inspected the defective car or the result of that inspection. The record is also silent as to the inspection made by the Kentwood Eastern Railroad Company, which loaded the pieces of timber on the cars. The record shows that the Public Belt authorities inspected the cars and the load and found them to be in good order and condition. * * * *
"We conclude, from an examination of the evidence and photographs found in the record, that the sill was affected with dry rot; but to what extent we cannot say. There is no evidence going to show that the usual outward indications of dry rot were present in this instance. And while we are of the opinion that the presence of dry rot in such a piece of timber might be discovered by the use of a hammer, and perhaps in other ways, we are not disposed to hold that a connecting carrier is required to make a complete and thorough inspection in every detail of every freight car which it receives from another railroad, while in course of transit. Such inspection might be required of the owner of the car or of the initial carrier; but it could not be reasonably required of a connecting carrier; and the latter can only be held for damages resulting from the breaking of a defective timber of a car which was discoverable by a reasonably careful inspection by a competent inspector of cars."
The court finally said "We hold, with our learned brother of the district court, that the accident resulting in the death of plaintiff's husband was inevitable, and that it resulted from a latent defect in the sill of a car for which the defendants before the court are not responsible. Patterson v. New Orleans Great Northern R. Co., 127 La. 44, 53 So. 406 [L.R.A.1917E, 210]." *Page 129 
Counsel for plaintiff, however, insists that the facts in the instant case are different from the Jacob case in that the defect in the door which caused the accident here was patent and not latent and that it could easily have been discovered by reasonable inspection by a competent inspector. We cannot agree with counsel. As we have said the car was inspected a number of times by a number of different inspectors none of whom discovered the defect. The Public Belt made the final inspection of the box car, which it may be presumed was similar to that given the flat car in the Jacob case, since it was the same railroad, and we hold here, as was held there, that it was a reasonable, careful inspection which could not have been expected to discover the defect in the door any more than the inspection given the flat car in the Jacob case could have been expected to reveal the defect in the sill of the flat car. As the opinion in the Jacob case plainly points out the obligation of a connecting and delivering carrier is quite different from that of the initial carrier or the owner of the car.
In our opinion the Jacob case is controlling here, consequently, and for the reasons assigned the judgment appealed from is affirmed.
Affirmed.
McCALEB, J., concurs.