[File No. 7338]

GERALD FILLER, by his Guardian Ad Litem, EMANUEL FILLER, Appellant, v. E. H. STENVICK and E. M. STEN-VICK, Respondents.

(56 NW2d 798)

Opinion filed January 31, 1953

C. A. *Waldron,* for appellant, *B. H. Bradford* and *Harold H. Halstead,* for respondents.

GRIMSON, J.  Plaintiff brings this suit by his guardian for injuries sustained while skating on an outdoor ice skating rink on the Mouse River in the City of Minot.  Plaintiff alleges in his complaint that the defendants owned, controlled and managed said rink; that defendants invited crowds of young people and children to enter upon the premises and to purchase tickets entitling the holders thereof to skate upon said rink; that the plaintiff upon said invitation purchased a ticket for skating thereon; that the defendants negligently and carelessly permitted the ice on said rink to become unsafe and failed to properly flood and maintain said rink; that the defendants knew or should have known the condition of said rink; that while plaintiff was skating on said rink on Dec. 19, 1950, the blade of one of his skates became wedged in one of the cracks in the ice thereby throwing him, breaking his leg and causing him great

pain and injury; that the negligence of the defendants was the proximate cause of plaintiff's injury.

The defendants who are husband and wife, filed separate answers in which they denied generally all of the allegations of the complaint except that the wife admits owning the property adjacent to the river skating rink. Management and control of the skating rink is specifically denied by both defendants. As an affirmative defense they allege contributory negligence on the part of the plaintiff.

The case was tried to a jury. At the close of the evidence separate motions for a dismissal of the action and for a directed verdict were made on behalf of each of the defendants on the ground that no cause of action had been proven against either defendant; that the evidence was insufficient to show that they or either of them were in control of the skating rink or responsible for the management thereof; that they had no knowledge of any defect in the ice and no means of ascertaining the presence thereof, and further, that there was contributory negligence on the part of the plaintiff. The motions were denied. The jury found for the plaintiff.

Thereafter, defendants made a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on the grounds that the court erred in denying the motions for a directed verdict or dismissal as made at the end of the trial. The motion for judgment notwithstanding the verdict was granted and judgment rendered for the defendants. This appeal is from the judgment so entered. The plaintiff assigns as specification of error on appeal that the court erred in granting the defendants' motion for judgment notwithstanding the verdict. He also alleges numerous errors by the trial court in the exclusion of testimony intended to further show management and control of the premises by the defendants.

The order of the district court on a motion for judgment notwithstanding the verdict amounts to a delayed action on the defendants' motion for a directed verdict made at the conclusion of the trial and is based upon the evidence as it then stood. The sole question before this court on an appeal is whether or not the evidence at that time warranted the decision

made. Weber v. United Hardware and Implement Mutuals Co., 75 ND 581, 31 NW2d 456, and cases cited.

The evidence shows that for some years a portion of the ice on the Mouse River, as it flows through the City of Minot, had been used in the winter as an open air skating rink, known as the "Bissel Rink." A warming house had been maintained on the bank of the river adjoining this skating rink. There the patrons could warm up, rent skates or have them sharpened. Confections also were there kept for sale. The ice in front of this warming house was kept free of snow and flooded. Artificial lights were provided. About five years previous to the accident the defendant, Elizabeth M. Stenvick, wife of the defendant, E. H. Stenvick, became the record owner of the property adjoining this river ice rink and on which the warming house stood. The maintenance of the rink and the warming house was continued. The plaintiff contends that the maintenance was by the defendants through their agents. The defendants claim they leased the warming house in the fall of 1950 to Glen Bissel, the man in charge, by a written lease which they introduced in evidence, and that they had nothing to do with the management of the warming house or the ice adjoining their property. The view we take of this case, however, makes it unnecessary to pass upon that issue or upon the rulings of the court on objection to the admission of some testimony in regard thereto.

The plaintiff was a boy 13 years old at the time of the accident. This was his fourth year of skating. He had skated over this ice on several occasions that fall prior to the accident. He had skated on the ice the evening of the accident and for a time engaged in a game called "pom-pom-pull away." Then he went into the warming house. On returning to the ice his skate became wedged in a crack in the ice causing him to fall and break his leg. The plaintiff does not contend that anything but this crack caused his accident and the evidence affirmatively shows that the crack was the sole cause thereof.

Before the plaintiff can recover damages for this accident there must be a showing of actionable negligence on the part of the proprietor of the rink, whoever he is, as the proximate cause of the accident.

"It is a general rule, of almost universal acceptance that an owner or proprietor of a theater or public amusement is bound to exercise a degree of ordinary and reasonable care for the safety and protection of his patrons—the degree of care that would be exercised by an ordinarily careful and prudent man in the same position and circumstances. Generally speaking, this obligation is met when the owner or proprietor makes the premises and instrumentalities as little dangerous as reasonable care can make them, having regard to the methods and contrivances necessarily used in conducting such a place, and, it has been said, to the activities and conduct of invitees using such place and instrumentalities in the manner which they are ordinarily used for the purposes for which they are designed and intended. Such degree of care is measured by the conduct of the average man, not that of the cautious man of more than average prudence." 52 Am Jur Theaters, Shows, Exhibitions, etc. Sec 47 P 291.

"Skating rinks are not ordinarily regarded as inherently dangerous or of such unusual nature as to impose on the owner or proprietor of such amusements an unusual degree of care." 52 Am Jur Theaters, Shows, and Exhibitions. Sec 63 p 307.

In Oberheim v. Pennsylvania Sports & Enterprises, 358 Pa 62, 55 A2d 766, it is said that:

"As an operator of the rink for paid admission, the defendant company was under a legal duty to keep the premises in a reasonably safe and suitable condition so that those coming upon them at the defendant's invitation, express or implied, would not be unnecessarily or unreasonably exposed to danger. Robb v. Niles-Bement-Pond Co. Inc., 269 Pa 298, 300, 112 A 459; Chapman v. Clothier, 274 Pa 394, 396, 118 A 356. The logical corollary is that an occupier of property in such circumstances is not liable for injuries sustained thereon by his invitees except upon proof of his causitive fault; Huey v. Gahlenbock, 121 Pa 238, 248, 15 A 520, 6 Am St Rep 270." See also Ivory v. Cincinnati Baseball Club Co. 62 Ohio App 514, 24 NE2d 837.

Before the owners or the operator of a skating rink can be held liable for damages they must be put on notice, actual or construc-

tive, of the defect or disrepair causing the damage. 52 Am Jur Theaters, Shows, Exhibitions, etc. Sec 59 P 303; annotations in 22 ALR 619; 140 ALR 428.

The testimony on behalf of the defendants is that the ice was flooded the afternoon just a few hours before the happening of the accident and the man in charge claims to have flooded it carefully and according to the usual custom. The plaintiff is uncertain as to when it was last flooded. The record reveals no showing that this river rink was not given ordinary and reasonable care for the protection and safety of its patrons nor was there any showing of affirmative acts in that connection constituting negligence on the part of the defendants.

The plaintiff had knowledge that cracks did appear at times for he testified to having seen a long crack in the ice a couple of days before the accident. There is nothing to show he notified the proprietor thereof. There is no showing that the defendants or Glen Bissel had any actual knowledge of the crack in the ice which caused the accident. There is only a contention that they should have known of it.

To impute constructive notice to the owner of premises, it must be shown that the owner should have discovered it. Norris v. Chicago, M., St. P. & P. R. Co., 74 SD 271, 51 NW2d 792 (1952); Nole v. Sixty-five O Four, Inc., 104 Cal App2d 632, 232 P2d 288. No such showing was made in the case at bar.

In support of his contention that this crack appearing in the ice was the result of negligence on the part of the proprietor, plaintiff cites the following cases. An analysis of those cases, however, shows that they are not in point under the facts in the instant case. Noble v. Park Enterprises, 313 Mass 454, 47 NE2d 947; Bloom v. Dalu Corp. 269 App Div 192, 54 NYS2d 831; Shanney v. Boston Madison Square Garden, 296 Mass 168, 5 NE2d 1; Rich v. Madison Square Garden Corporation, 149 Misc 123, 266 NYS 288; Murphy v. Winter Garden & Ice Co. 280 SW 444 (Mo App 1926); Fieger v. Imperial Skating Rink, 148 Ore 137, 35 P2d 683.

In every one of these cases recovery was based on some structural defect in the rink or its appurtenances which should have been remedied by the proprietor or reckless acts of third parties

which the management should have controlled or a combination of the two. No such circumstances appear in the case at bar.

On the other hand it is clear that plaintiff's fall and injury was caused solely by the crack in the ice. This crack was described as from 12 to 18 inches long, and about one inch deep and as testified to by the policeman was "rough, chipped by some instrument." Clearly that indicates a crack made by a skater during some maneuvering on the ice. It is well known, even to skaters of limited experience, that the surface of an ice rink becomes rutted, gouged and grooved in a short time. The surface of an ice skating rink is subject to continuous, gruelling punishment by the vigorous action of sharp, steel blades. These conditions are inherent in the sport of skating and are known to everyone participating therein. Plaintiff had been skating on this very ice for some time before the accident and did not notice the crack. There were others skating at the time and even playing a form of tag in which the players make a dash for a goal at the signal, "pom-pom-pull away" in which the plaintiff himself joined. Gouging of the ice under such circumstances is very liable to happen and cannot be prevented by the proprietor or manager of a rink by the use of ordinary care for the protection of his patrons. Those are conditions inherent in the sport of skating and necessarily every skater takes his chances on avoiding injuries caused thereby.

In 4 Shearman & Redfield on Negligence, Amusements and Sports, Sec 647 P 1566, it is said that:

"One who participates in the diversion afforded by an amusement device accepts the dangers that inhere in it so far as they are obvious and necessary. The same is true of one who participates in other sports or pastimes, 'just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball.'"

In McCullough v. Omaha Coliseum Corporation, 144 Neb 92, 12 NW2d 639, a sixteen year old boy with five years of experience in ice skating fell because of the condition of the surface of the ice, concealed by ice shavings, and had his hand cut by the blade of another skater's skate. The judgment he obtained in trial

court was set aside on appeal. The court outlined the duties of an operator of a place of public amusement, and then said: .

"The duty resting on such operator requires him to warn his patrons of any dangers known to him, or which he should know in the exercise of reasonable care, and not known to his patrons, unless such dangers are observable to them in the exercise of reasonable care for their own safety."

In Clayton v. New Dreamland Roller Skating Rink, 14 NJ Super 390, 82 A2d 458, it is said:

"As a general principle the proprietor of an amusement park is not an insurer of the safety of patrons and is not bound to protect them from such obvious risks as are necessarily incidental to the use of the premises or its amusement devices. . . . There is nothing distinctive about the liability of owners of skating rinks apart from the general responsibility to maintain the premises in a reasonably safe condition."

In Gover v. Central Vermont Railway Co. 96 Vt 208, 118 A 874, 877, it is held that if one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have taken the risk and is precluded from recovery for injuries resulting therefrom. That doctrine is predicated upon the theory of the knowledge and appreciation of the danger and the voluntary assent thereto. In Chicago, R. I. & P. R. Co. v. Lewis, 103 Ark 99, 145 SW 898, it is said:

"The doctrine is based on the voluntary exposure to known danger and can be applied only when a person may 'reasonably elect' whether or not he shall expose himself to it."

The maxim does not apply on mere showing of knowledge of the danger, but only where the circumstances are such as warrant the inference that the plaintiff encountered the risk freely and voluntarily with full knowledge of the nature and extent thereof. Thomas v. Quartermaine (Eng) LR 18 QD Div 685—CA.

Clearly that doctrine applies in the case at bar. The plaintiff had full knowledge of the danger that might be caused by cracks in the ice occurring at any time. He chose to run the risk of that danger without any compulsion but merely for the sake of the sport itself. Under such circumstances he cannot

hold the proprietor or manager of the rink liable for any damage caused thereby.

The defendants were entitled to a directed verdict at the close of the evidence as a matter of law. The court's order granting judgment notwithstanding the verdict was correct.

The judgment of the district court is affirmed.

MORRIS, C. J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.