(53 South. 406.)

No. 18,220.

PATTERSON v. NEW ORLEANS GREAT NORTHERN R. CO.

(Oct. 17, 1910.)

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 276*)—INJURY TO SERVANT—EVIDENCE.

Where, in an action for damages for injuries to, and the death of, a locomotive fireman, resulting from the jumping from the track of the tender and the overturning of the engine, whilst they were backing at the rate of 18 or 20 miles an hour, the testimony of all the witnesses is to the effect that the speed was not excessive, that the road was in good order, and that the engine was new and in almost perfect condition, and there is no suggestion (in the testimony) of any negligence, on the part of the railroad company, which could have caused the accident, the demand for damages must be rejected.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Irene Patterson, widow, against the New Orleans Great Northern Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

E. A. O'Sullivan, for appellant. Farrar, Jonas, Goldsborough & Goldberg, for appellee.

MONROE, J. Plaintiff sues, as the widow of Samuel Patterson, a fireman in the employ of the defendant company, who lost his life whilst in the discharge of his duties, to recover damages, such as he might have been entitled to and as she has sustained, in consequence of his injuries and death. She alleges that, whilst the engine upon which her husband was employed was running, on the main line of the defendant's road, through no fault of his, it ran off the track and turned over, with the result that he was badly scalded, and, after lingering in torture for a few days, died. She further alleges that the accident was caused by the failure of the defendant to keep its roadbed, rails, and ties in proper order; that, unknown to the deceased, the roadbed was neglected and insufficiently filled; that the rails were badly used and unfit; and that the ties were rotten and too far apart. Wherefore she prays for judgment. Defendant denies the negligence imputed to it, and alleges that the deceased was injured through the fault of his fellow servant, the engineer, who, contrary to orders, ran his engine backwards, over a new track, at an unlawful and improper rate of speed, whereby it was derailed.

An intervention was filed on behalf of a member of the bar, other than plaintiff's attorney of record, setting up certain rights; but, as they have not been insisted on, we presume the claim has been abandoned or adjusted.

The evidence shows that the engine (No. 102) on which the deceased was working, on September 30, 1907, pulled a train from New Orleans to Bogalusa; that the engine then backed down, on the track upon which it had just passed (the cars, constituting the train that it had pulled up, having been run into a siding), to a point called Rio, where, having turned around (by means of a Y), it was backing, on the main track again, with the tender in front, in the direction of Bogalusa, when the tender "jumped the track" and the engine turned over, with the result that those who were on board—engineer, fireman, conductor, and porter—were all more or less badly hurt, so that Patterson, the fireman, subsequently died of his injuries.

Plaintiff testified to her marriage and to the suffering and death of her husband; and the engineer and conductor were called as witnesses in her behalf. The witnesses for defendant were a master mechanic, who knew the engine and tender; an engineer, who had been in charge of the engine prior to the accident; the porter, who was on the engine at the time of the accident; and a track foreman, in charge of an extra gang, who was acquainted with, and worked, the road at the point where the accident occurred. From the testimony given it appears that the engine had been delivered from the Baldwin works in February or March, preceding the accident (which occurred on September 30th), and, with the tender, was in first-class condition. The road was comparatively new—say about 12 or 14 months old—and, prior to the accident, had been in constant use, some five trains a day passing over it. The witnesses all testified that it was in good condition, and the track foreman said that, at the point where the accident occurred, it had been surfaced and had received several inches of gravel on September 1st. He also testified that he had passed over it, at that point, every day, and had observed nothing amiss, and that, when he repaired it, after the accident, he found all the ties sound, save those which had been split by the locomotive or tender, when they were de-

railed, and replaced them. The track was laid with rails weighing 80 pounds to the yard, which is said to be a reasonably, if not unusually, heavy rail. Before backing down from Bogalusa, the engineer had filled his tank with water, and, at the moment of the accident, he was backing towards Bogalusa, on the same track over which he had just backed, and was moving at the rate of 18 or 20 miles an hour, which he and several other witnesses who were interrogated on the subject say was not an unusual or excessive rate, upon such a track. It seems to be the consensus of opinion among the witnesses that a tender is more likely to jump a track when no car is attached to it than when a car, or train, is attached, and is more likely to meet with such an accident when being pushed than when being pulled. The fact that plaintiff's husband met with the injuries alleged in the petition, and that they caused his death, is beyond dispute; and it is equally undisputed that those injuries resulted from the overturning of the locomotive on which he was employed, whilst he was in the discharge of the duties for which he was employed, and without any fault of his. But there is no witness who suggests that the turning over of the engine was, or could have been, the result of any neglect on the part of the defendant of the duty to provide, as far as was reasonably possible, a sound roadbed and a sound engine. On the contrary, the witnesses all agree that the road was good, and the engine new and in perfect condition, and, they say that they are unable to account for the accident, and, in effect, that it is not the first accident within their knowledge for which no cause was apparent or discoverable.

The case was tried in the district court without a jury, and there was judgment for defendant. We are of the opinion that the judgment should be affirmed; and it is so ordered.