(63 South. 306.)

No. 19,645.

JACOB v. ILLINOIS CENT. R. CO. et al.

(Oct. 20, 1913.)

*(Syllabus by the Court.)*

1. DAMAGES (§ 163*)—BURDEN OF PROOF.

In a suit for damages, the burden of proof is on the plaintiff.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 454–459; Dec. Dig. § 163.*]

2. MASTER AND SERVANT (§ 90*)—INJURY TO SERVANT—ACTIONABLE NEGLIGENCE.

Where an employer does that which is commonly and generally done by competent and careful persons or corporations in the same general line of business, he is not guilty of actionable negligence. Travis v. Railroad, 121 La. 887, 46 South. 909; Muse v. Rapides Lumber Co., 132 La. 488, 61 South. 536.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 139; Dec. Dig. § 90.*]

3. RAILROADS (§ 275*)—PERSONAL INJURIES—DEFECTIVE CARS—LIABILITY.

It seems to be a rule very generally followed by the reported cases that, where the carrier selects a car and furnishes it to the shipper for his use, the carrier will be liable for any personal injuries resulting to any one whose connection with the shipment causes him to be on the car, which injuries are caused by the defective condition of the car, where such a condition could have been discovered by a reasonable inspection. Editor of L. R. A. (N. S.) in volume 9, p. 857.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 873–877; Dec. Dig. § 275.*]

4. RAILROADS (§ 262*)—PERSONAL INJURIES—DEFECTIVE CARS—LIABILITY OF CONNECTING CARRIER.

Where a common carrier receives in transit a defective freight car from another carrier, when the defect is latent and is not discovered by the connecting carrier after a careful and reasonable inspection, the latter will not be responsible in damages caused by the sudden breaking of a defective timber in such car.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 831, 832; Dec. Dig. § 262.*]

*(Additional Syllabus by Editorial Staff.)*

5. RAILROADS (§ 282*)—PERSONAL INJURIES—DEFECTIVE CAR—NEGLIGENT INSPECTION—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for the death of a stevedore's employé from the breaking of a defective timber in a car received from another carrier by the connecting carrier and furnished to the shipper, *held* insufficient to show actionable negligence of the connecting carrier through any failure to properly inspect the car.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

6. MASTER AND SERVANT (§ 270*)—INJURY TO SERVANT—INSPECTION—EVIDENCE OF CUSTOM.

In an action for the death of a stevedore's employé from the breaking of a defective timber in a car being unloaded, evidence of a custom among the stevedores to make general inspection of a car before unloading it was properly admitted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

7. MASTER AND SERVANT (§ 125*)—INJURY TO
SERVANT—DUTY TO INSPECT.

A stevedore is not liable to his employé for
injuries from latent defects in the construction
of a car or from defects not discoverable by the
ordinary, careful observer who is removing
freight from such car.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 243–251; Dec. Dig. §
125.*]

Appeal from Civil District Court, Parish of
Orleans; E. K. Skinner, Judge.

Action by Mrs. Annie Jacob, individually
and as tutrix, against the Illinois Central
Railroad Company and others. From a judg-
ment of dismissal, plaintiff appeals. Af-
firmed.

H. P. Sneed, G. J. Ray, and Meyer S. Drei-
fus, all of New Orleans, for appellant. James
Legendre and Edward Rightor, both of New
Orleans, for appellee Ross & Heyn. I. D.
Moore, City Atty., and John J. Reilley, both
of New Orleans, for appellee City of New Or-
leans.

SOMMERVILLE, J. Mrs. Annie Jacob,
widow of Frederick Jacob, individually and
as tutrix of their minor children, sues the de-
fendants in solido in the sum of $50,000 for
damages resulting to them from the loss and
death of their late husband and father.
There was judgment dismissing plaintiff's de-
mand, and she has appealed.

The deceased, Frederick Jacob, a day la-
borer, was in the employ of a firm of steve-
dores, Ross & Heyn, doing business in the
city of New Orleans, at the time of his acci-
dental death. They were engaged in unload-
ing very long pieces of timber which extended
over two flat cars belonging to the Cincin-
nati, New Orleans & Texas & Pacific Rail-
way Company. This company is not before
the court. An exception filed by it to the
jurisdiction of the court was sustained, and
no appeal has been taken from that judg-
ment.

The pieces of timber, some 16 in number,

133 LA.—24

were loaded on the cars by the Kentwood &
Eastern Railroad Company. And that com-
pany has not been made a party to the suit,
and hence it is not before the court.

The cars were brought from Kentwood,
La., to New Orleans by the Illinois Central
Railroad Company; but the suit is not press-
ed against that company. There is no evi-
dence for or against it; and no argument
has been made concerning its liability. Plain-
tiff abandons her claim against it on her
brief filed in this court.

When the cars arrived in New Orleans
they were transferred by the Illinois Central
Railroad Company to the Public Belt Rail-
road, belonging to and operated by the city
of New Orleans. The cars were standing
upon the tracks of the Public Belt at the time
of the accident resulting in the death of Mr.
Jacob; and the stevedores, Ross & Heyn,
were engaged in transferring the timbers
from the cars to a vessel lying near the Pub-
lic Belt tracks. The city of New Orleans and
Ross & Heyn are the only defendants now
before the court.

[1] The timbers were square-edged; they
were piled one on top of the other four deep
and four wide; their weight was about
72,400 pounds; and they were of such great
length that two flat cars were used to carry
them. One of these flat cars was made of
iron and the other of wood; it was a sill of
the latter (the wooden car) which broke and
caused the accident. A piece of the sill,
some three or four feet in length, suddenly
broke out of the sill; and this broken piece
carried with it two of the stanchions which
were in the iron pockets attached to that por-
tion of the sill. The accident was clearly
due to the faulty condition of the wooden car,
the sill of which broke, and the breaking of
which sill precipitated some of the timber to
the ground on the opposite side of the car
from which the pieces of timber were being
unloaded. The deceased was thrown from

his position on the car and crushed to death beneath a piece of falling timber. No fault whatever is sought to be charged against him.

This load of timber was held in place by wooden stanchions. The stanchions had been wired together at the top. These wires had been cut by the workmen, and the stanchions on the sides of the cars nearer the river had been removed. Some two or three pieces of timber had been unloaded, when three or four pieces fell from the opposite side of the car, bearing down the stanchions that held the load in place, and breaking or tearing out the piece of three or four feet in length of the sill of the car before mentioned. The breaking of the sill was the cause of the accident which resulted in the death of Mr. Jacob.

The break in the sill makes it quite evident that the sill was defective at that point. And this is further shown by the testimony found in the record.

It is argued on behalf of plaintiff that it was the duty of the city of New Orleans, through its Belt Railroad Commission, to have inspected the cars in question and to have discovered the faulty condition of the sill of one of them, and that it was at fault in not having made such proper inspection and in not having rejected the car when delivered to the Belt Road by the Illinois Central Railroad Company. And she also argues, as to Ross & Heyn, that they were at fault in not making a proper inspection of the car and in discovering the faulty sill, and also in not having provided a safe place for their servant, her husband, to work in.

It is the duty of the owners of cars to examine them carefully with the view of seeing that they are safe in all their parts. It is also the duty of a railroad company which receives cars from another company to inspect the same with the view of ascertaining their condition. And it is equally true that employers must provide their servants with safe places to work in, and with proper appliances to work with.

[5] The record is silent as to when and how the Cincinnati, New Orleans & Texas & Pacific Railroad Company, the owner of the car in question, inspected the defective car or the result of that inspection. The record is also silent as to the inspection made by the Kentwood & Eastern Railroad Company, which loaded the pieces of timber on the cars. The record shows that the Public Belt authorities inspected the cars and the load and found them to be in good order and condition. But that Ross & Heyn, stevedores, made only a casual inspection of the cars before proceeding with the unloading.

The inspector for the Public Belt had been engaged in inspecting cars for six or seven years at the time of the accident, and he had been a repairer of cars before that time. He is now employed by the Illinois Central Railroad Company as a car inspector. And, as the judge of the trial court, who saw and heard this witness, accepted his testimony, we shall accept it also as that of a competent and reliable witness. The Public Belt will not be held to be at fault in employing this witness as an inspector of cars. He testified that he had examined this car when it was received from the Illinois Central Railroad Company, and that it was in good condition, and that the load thereon was in good shape and in good order. He testified that he went underneath the car for the purpose of inspecting it, and that his examination was complete. He was not asked about the particular defect which afterwards developed in this car. But it would appear from the evidence, both oral and by photograph, that the defect in the sill was not apparent; and it is not shown how the same might have been discovered by the inspector. One of the witnesses for plaintiff, a day laborer, testified that the broken sill looked as if it were affected

by dry sap; and a second witness, a photographer, testified that it was affected by dry rot, and again that:

"The outside piece of timber seemed to be sappy (in other words, decayed); the inside part (the heart) appeared to be good. Q. The heart of it appeared to be good and hard? A. Yes, sir. Q. But the outside appeared to be sappy? A. Yes, sir. Q. What was the depth of that sap on the outside? A. To the best of my knowledge about two inches in depth. Q. About what length? A. Well, I judge about three or four feet. Q. By an indication of sap do you mean damp? A. No, sir; I mean by that that the wood was decaying."

[4] This evidence as to the condition of the sill is not satisfactory; it appears to be inconsistent. One would hardly expect dry rot and sap to exist at the same time in the space of three or four feet in a piece of timber. We conclude, from an examination of the evidence and photographs found in the record, that the sill was affected with dry rot; but to what extent we cannot say. There is no evidence going to show that the usual outward indications of dry rot were present in this instance. And while we are of the opinion that the presence of dry rot in such a piece of timber might be discovered by the use of a hammer, and perhaps in other ways, we are not disposed to hold that a connecting carrier is required to make a complete and thorough inspection in every detail of every freight car which it receives from another railroad, while in course of transit. Such inspection might be required of the owner of the car or of the initial carrier; but it could not be reasonably required of a connecting carrier; and the latter can only be held for damages resulting from the breaking of a defective timber of a car which was discoverable by a reasonably careful inspection by a competent inspector of cars. The written report made by the car inspector of the Belt Railroad to his superior indicates that the inspection was thorough and complete; and, on cross-examination of this witness, the report was not impeached in any way.

[3] "It seems to be a rule very generally followed by the reported cases that, where the carrier selects a car and furnishes it to a shipper for his use, the carrier will be liable for any personal injuries resulting to any one whose connection with the shipment causes him to be on the car, which injuries are caused by the defective condition of the car, where such a condition could have been discovered by a reasonable inspection." 9 L. R. A. (N. S.) 857.

The photographs offered in evidence indicate that the car, as is usual, was painted, with the letters of the company owning it appearing thereon; and we hold, with the district judge, that the existing dry rot in that particular sill was a latent defect, not discoverable by a reasonable inspection of a car in actual transit, for which the law does not hold the defendants, the Belt Railroad Company or the city of New Orleans, responsible.

There is some evidence in the record as to the unevenness of the tracks of the Belt Road; but the positive evidence is that the track is curved at the place of the accident, and that the outer rail is less than two inches higher than the inside rail, and that this relative position of rails is adopted by all railroad companies for safety in moving trains over curves.

We find no fault which is imputable to the Public Belt or the city of New Orleans in the management of its road.

Ross & Heyn, defendants, the stevedores who were engaged in unloading the car which caused the accident, are sought to be held on two grounds: (1) That they did not cause a proper inspection of the car to be made; and (2) that they, as masters, did not provide a safe place for their workmen to work in.

[6, 7] Defendants Ross & Heyn offered, as a witness, their foreman who was in charge of the gang of laborers unloading the car; and he testified that he inspected the car by

looking carefully over it, particularly with reference to the unloading of the same, and found everything in good order. They further offered evidence showing that this was the custom of stevedores in making inspections of loaded cars. Objection was made to this evidence and properly overruled.

We are clearly of the opinion that the inspection contended for by plaintiff must be made by the owner of the cars or by the initial carrier of the freight and not by the consignee or the stevedore who is engaged to unload said car. That such stevedore shall make a careful inspection is true; but he cannot be held responsible for latent defects in the construction of the car or for those which are not discoverable by the ordinary careful observer who is engaged, in the occupation of removing freight from said cars. And it was competent for defendant to offer evidence going to show that the custom among stevedores in this port was to make a general inspection and not the minute and thorough inspection required of the owner and loader of a car.

As to the place at which Ross & Heyn put the deceased and his fellow workmen to work, we hold that they did everything that prudent, cautious, and careful employers could have done for the security of their workmen. They had no reason to suspect any defect in the sill of the car. Their foreman had inspected same. The car had traveled many miles with its heavy load upon it; it had been inspected by two, or perhaps three, railroad companies and had been passed upon as being safe and in good condition. They saw the cars which were apparently in good order and condition, and they tacitly accepted the previous findings of the several railroad companies.

[2] The employment by Ross & Heyn of a car inspector in this port would be an innovation and a thing that consignees of cars do not resort to; and the court could only fix responsibility upon them in this case by maintaining that they should have employed such an inspector. Where an employer does what is commonly and generally done by persons or corporations in the same general line of business, he is not guilty of actionable negligence for injuries resulting from accidents. Travis v. Railroad, 121 La. 887, 46 South. 909; Muse v. Rapides Lumber Co., 132 La. 488, 61 South. 536.

"An act or omission may be so clearly negligent, or so clearly free from negligence, that the customary use of the same degree of care by others in like circumstances becomes immaterial.

"But, where the character of the act or omission is doubtful, the true test of actionable negligence is the degree of care which persons of ordinary intelligence and prudence, engaged in the same kind of business, commonly exercise in like circumstances. If the care exercised in such a case arises to or above that standard, there is no actionable negligence. If it falls below that standard, there is.

"In cases of this character, where the question of negligence is at issue, evidence of the ordinary practice and of the uniform custom, if any, of other persons of ordinary intelligence and prudence, engaged in the same kind of business under similar circumstances in the performance of acts like those which are alleged to have been done negligently, is competent, and it is error to reject or disregard it because such evidence presents to the jury the correct standard for the determination of the issue." Canadian Northern Ry. Co. v. Senske, 201 Fed. 637, 120 C. C. A. 65.

Plaintiff has not shown actual negligence on the part of defendants or a condition which was obviously dangerous, while defendants have shown that they used due care.

There was no outward suggestion that the construction of the car was defective. It has been shown that Ross & Heyn employed a competent foreman; that this foreman made a proper inspection; and that the hidden defect that developed was such a defect that could only be discovered by a railroad car inspector possessing the expert knowledge that Ross & Heyn and their foreman neither had nor were expected to have.

We hold, with our learned brother of the district court, that the accident resulting in the death of plaintiff's husband was inevi-

table, and that it resulted from a latent defect in the sill of a car for which the defendants before the court are not responsible. Patterson v. N. O. Great Northern R. R., 127 La. 44, 53 South. 406.

Judgment affirmed.