HALL, Judge.
This suit arises out of an accident in which I. V. Davenport, an employee of Bird & Son, Inc., was injured when a large sheet of metal fell on him while he was cleaning out a railroad boxcar at the Bird & Son shipping dock in Shreveport. Davenport was paid workmen’s compensation benefits by Employers Mutual Liability Insurance Company of Wisconsin, workmen’s compensation insurer of the employer.
Davenport and Employers Mutual brought suit for damages and to recover the workmen’s compensation benefits paid by the insurer against (1) Loket-Sanders Paper Company of North Little Rock, Arkansas, which company had shipped a load of wastepaper to Bird & Son in the boxcar ; (2) Employers-Commercial Union Insurance Company, liability insurer of Lok-et-Sanders; and (3) Texas & Pacific Railway Company and Missouri-Pacific Railroad Company, owners of the boxcar, which companies are considered as one and the same for purposes of this litigation. All defendants answered denying liability and pleading Davenport’s contributory negligence. Loket-Sanders and its insurer filed a third party petition against the railroad companies, which in turn filed a third party petition against Loket-Sanders and its insurer.
After trial, the district court rendered judgment in favor of plaintiffs in the total sum of $12,209.34, against Loket-Sanders and its insurer. Plaintiffs’ demands against the railroad companies were rejected. Loket-Sanders and its insurer perfected suspensive appeals. Plaintiff, Employers Mutual, appealed insofar as the judgment rejected its demands against the railroad companies. Plaintiff, Davenport, appealed on the same basis and also asks for an increase in the award. The railroad companies appealed to protect their third party demand against Loket-Sanders and its insurer in the event they are cast on appeal.
THE FACTS
The boxcar is owned by the railroad companies. It was manufactured in 1945 and was refurbished in 1971. It originally had two doors on each side but when the boxcar was refurbished, the doors on each side at one end were closed off by the installation of sheets of steel on each side over the doors. The boxcar was consigned on a regular basis to Georgia-Pacific Lumber Company in Urania, Louisiana, for a period of time. In May, 1971, the boxcar was transported by the railroad companies to North Little Rock, Arkansas, for the purpose of hauling a shipment of wastepaper from Loket-Sanders to Bird & Son.
The car was delivered to Loket-Sanders for loading. Loket-Sanders’ employee, Robert Walker, handled the loading operation. Prior to loading, he found a large sheet of metal approximately the size of a boxcar door on the floor of the car. It was established that the sheet of metal had been cut from the interior side of the car over one of the doors, but the evidence *604 does not disclose when, where, or by whom this was done.
Walker took his lifting machine and lifted the sheet of .metal and propped it against one end of the boxcar. He then proceeded to load the car with bales of wastepaper, similar to bales of cotton. Walker testified the sheet of metal was not propped or supported by anything other than the bales loaded into the car, but it seemed to him that it would not fall.
The car was then transported by the railroad companies to the Bird & Son unloading dock in Shreveport. The car was unloaded by Bird & Son’s employees. After the car was unloaded, Alvin Anderson, an employee, swept it out. Anderson testified he saw the sheet of metal in the east end of the boxcar. He noticed a piece of steel three or four feet in length which he described as a bar lying on a shelf of the sheet of metal, but did not notice any pieces of metal leaning against or propped against the large sheet of metal.
The exact location of the boxcar between the time it was unloaded and the date of the accident is not disclosed by the evidence, but it either remained on the spur track at the unloading dock or on another track used for storing boxcars. It was later transported by the railroad company to the loading dock on the other side of the plant for the purpose of being loaded with roofing to be shipped by Bird & Son.
Bird & Son assigned a three-man crew to handle the loading operation. Davenport, a laborer, had the duty of cleaning out the car preparatory to loading. He entered the boxcar, saw a piece of angle iron several feet in length leaning against the end wall, picked up the piece of angle iron with the intention of removing it from the car, and turned to walk out the door of the car. At this time, the entire sheet of metal at the end of the car fell on him, breaking his leg. Co-workers coming to his assistance noticed the piece of angle iron lying next to him under the large sheet of metal.
CONTRIBUTORY NEGLIGENCE OF DAVENPORT
All defendants pled contributory negligence on the part of Davenport in failing to notice the sheet of metal and in removing the angle iron which allegedly was supporting the sheet against the end of the car. Since a finding of contributory negligence would bar recovery by plaintiffs, we consider this affirmative defense at the outset.
The trial judge found Davenport had no reasonable opportunity to observe that the sheet of metal was not part of the wall. The trial judge further found the bar of iron he picked up was not a prop, or at least not obviously so. The photographs in evidence demonstrate the difficulty one would have in discerning any difference in the appearance of the end of the car where the sheet metal was not attached and the sides of the car to which the same material was attached. Davenport was not negligent in failing to observe that the sheet metal was not part of the wall. Neither was he negligent in removing the piece of angle iron which did not appear to be serving any useful purpose and the removal of which was the kind of duty he was supposed to perform in cleaning out the car.
NEGLIGENCE AND LIABILITY OF LOKET-SANDERS
Loket-Sanders’ employee, Robert Walker, was clearly negligent in placing the large sheet of metal against the end wall. He created a dangerous condition — a virtual trap for persons entering the car when and after the bales of wastepaper were unloaded. This negligence was a legal cause of the accident and resulting injuries to Davenport.
Loket-Sanders and its insurer contend any negligence on its part was not a legal or proximate cause of the accident in that it was only a remote cause. Loket-Sanders further contends that the doctrine *605 of intervening cause is applicable. Neither contention has merit. Loket-Sanders, in loading the boxcar, had a duty not to create a dangerous situation and this duty extended to those who could reasonably be expected to thereafter enter the boxcar for legitimate ■ purposes. This duty extended to those who might be unloading or loading the car in the usual course of events. There is no proof of any intervening act on the part of anyone which added to or changed the dangerous condition created by Loket-Sanders’ employee. The trial judge correctly held Loket-Sanders and its insurer liable to plaintiffs.
NEGLIGENCE AND LIABILITY OF THE RAILROAD COMPANIES
Plaintiffs and Loket-Sanders contend the railroad companies were negligent in furnishing a defective car; in failing to inspect the car and discover the loose piece of sheet metal on the floor prior to delivery of the car to Loket-Sanders; and'in failing to inspect the car and discover the loose piece of sheet metal against the wall after the car was unloaded and prior to delivery of the car to Bird & Son’s loading dock.
Several cases are cited for the proposition that a railroad company has the duty to furnish a safe car free from defects and that it is responsible for injuries caused by defects which could have been discovered by a reasonable, careful inspection.
The rules as set forth in Jacob v. Illinois Cent. R. Co., 133 La. 735, 63 So. 306 (1913), regarding the duties of railroad companies in furnishing and inspecting boxcars have been substantially followed by subsequent cases dealing with similar issues. The court in Jacob defined these duties as follows:
“It is the duty of the owners of cars to examine them carefully with the view of seeing that they are safe in all their parts. It is also the duty of a railroad company which receives cars from another company to inspect the same with the view of ascertaining their condition.
* * * * * *
“. .. . we are not disposed to hold that a connecting carrier is required to make a complete and thorough inspection in every detail of every freight car which it receives from another railroad, while in course of transit. Such inspection might be required of the owner of the car or of the initial carrier; but it could not be reasonably required of a connecting carrier; and the latter can only be held for damages resulting from [a defect] which was discoverable by a reasonable careful inspection by a competent inspection of cars.
‡ ‡
“ ‘It seems to be a rule very generally followed by the reported cases that, where the carrier selects a car and furnishes it to a shipper for his use, the carrier will be liable for any personal injuries resulting to any one whose connection with the shipment causes him to be on the car, which injuries are caused by the defective condition of the car, where such a condition could have been discovered by a reasonable inspection.’ 9 L.R.A.(N.S.) 857.”
A higher duty is imposed on the owner and the initial or furnishing carrier of the car than on the connecting carrier handling the car in transit. The owner or initial carrier of the car must inspect the car carefully and see that it is safe in all its parts. The connecting carrier is required to discover defects in the car which could have been found by making a reasonable inspection.
The cause of the damage in the Jacob case was a defective sill of a flatcar. The only railroad company whose liability was in question was the connecting carrier. The court in Jacob found in favor of the connecting carrier holding that the dry rotted sill was a latent defect not discoverable by a reasonable inspection.
*606 In Franklin v. Illinois Cent. R. Co., 13 So.2d 125 (La.App.Orl.Cir.1943), a door of a boxcar fell off and injured plaintiff. The same connecting carrier in Jacob was named defendant and the court held that any defect in the door was not discoverable by a reasonable inspection.
Another case involving the falling off of a boxcar door is Baxter v. Texas & Pacific Railway Company, 102 So.2d 97 (La. App.Orl.Cir.1958). The door fell off and injured plaintiff because the bottom door rail was bent. The owner of the car and the connecting carrier of the car were made defendants. The trial court ruled in favor of the connecting carrier and ruled against the owner of the car. Plaintiff failed to properly appeal from the judgment in favor of the connecting carrier and the appeal against it was dismissed. The issue On appeal was whether the employees of the owner of the car at the point where the car was dispatched to the shipper should have been expected to observe and ascertain the defective and unsafe condition of the empty car. . Defendant’s inspector checked the air brakes and looked at the cars on both sides but found no defects. He admitted he could have observed the defect in the door if the door had been open. There was a question of whether or not the door was open at the time of the inspection.
The court, in holding the furnishing carrier liable, stated:
“The car furnished by defendant to the shipper in this case was defective and in an unsafe state of repair. If the defendant knew not of these circumstances, to exculpate itself from liability for plaintiff’s damages it became encumbent on defendant to show that the unsafe condition .of the car could not have been discovered upon a due inspection.
# # * >fc
“Our conclusion in the case is that whereas defendant furnished a car which was defective and unsafe, which circumstances could have been ascertained even upon a reasonable, careful inspection, defendant’s liability unto plaintiff for his damage is clear.
“In 75 C.J.S. Railroads § 924, p. 333, it is stated:
‘A railroad company owes a duty to all persons who are required to go on or about its cars or cars which are furnished or delivered by it in connection with its business to exercise reasonable or ordinary care to inspect such cars, and to have them in such repair or condition that they may be used with reasonable safety, or to give notice or warning of defects in such cars which are discoverable by due inspection to persons who are entitled to such notice or warning. These duties may be owing to the shipper and to his employees, with respect to loading, or to the consignee and to his employees, with respect to unloading. * * *
In St. Louis S. W. Ry. Co. v. Davis, 204 F.2d 251 (5th Cir. 1953), the connecting carrier was held liable for its negligence in failing to make a reasonable, careful inspection of a gondola-type railroad car. The end gate of the car was sprung out of shape so that the latches could not properly close and the plaintiff was injured when the gate fell on him. The court held that this defective condition was open and patent and it was apparent that no reasonable, careful inspection was made. The owner of the car was not made a defendant in this case.
In Griffin v. Missouri Pacific Railroad Company, 413 F.2d 9 (5th Cir. 1969), an iron rail was shaken loose from a wall of a railroad car and fell on plaintiff. The court found Kansas City Southern Railway Company, the owner of the car, liable because it furnished a car which was not reasonably safe for the unloading process and the furnishing of the car in that condition was the proximate cause of the accident. Missouri-Pacific Railroad Company, the connecting carrier, was exonerated from liability. The court held that the de- *607 feet was latent and could not have been discovered in a routine inspection.
The most recent case dealing with the duty of a railroad company to inspect cars is Wheeler v. Illinois Central Railroad, 250 So.2d 194 (La.App. 1st Cir. 1971). Plaintiff and another worker were attempting to close a boxcar door when the door fell off and injured plaintiff. The owner of the car was not made a defendant and Illinois Central was made a defendant as the connecting carrier. The accident was caused by a rusty condition of the top guide of the boxcar door. The court held the inspection performed by the defendant was reasonable and adequate to discover any defects that were not latent, the defect was latent, and plaintiff failed to prove any negligence on the part of the defendant.
In the instant case the trial judge found the railroad companies did not have a reasonable opportunity to make inspection or learn of the defect or dangerous condition.
It is true the railroad companies had no reasonable opportunity to discover the dangerous condition created by the Loket-Sanders’ employee until after the car was unloaded and the railroad companies regained custody of the car and moved it from the unloading dock. At this point, however, prior to delivery of the car to the loading dock for loading of a new shipment, the railroad companies had both the duty and the opportunity to inspect the empty car.
The car was spotted at Bird & Son’s unloading dock on June 1, 1971, and was unloaded there by Bird & Son’s employees. The accident occurred at the loading dock on the other side of Bird & Son’s plant on June 5, 1971. The record does not reveal the exact whereabouts and movement of the car during this interval.
The record does reveal that there are two spurs into the Bird & Son plant—one to the loading dock and one to the unloading dock. There are also tracks where empty and loaded cars are stored, which cars are sent in by the railroad to the appropriate docks as requested by Bird & Son.
In any event, it is evident that after the car was unloaded, it was transported by the railroad from the unloading dock to the loading dock. It may or may not have been held on the storage tracks for a period of time. In transporting the empty car to the loading dock for the purpose of being loaded for a shipment, the railroad occupied the position of owner of the car and as furnishing or initial carrier. As such, the railroad had the duty of furnishing a safe car, free from defects. It had a duty to make a reasonable, careful inspection of the car. This duty extends to those who go in or about the car in the process of loading or unloading.
There is no evidence that the railroad made any inspection whatsoever of the car between the time it picked up the car after it was unloaded and the time it delivered the empty car to the loading dock. The claims agent for the railroad testified that the interior of a car is never inspected unless a customer calls its attention to some problem.
The duty of the owner and furnish-er or initial carrier to provide a safe car and to make a reasonable, careful inspection includes an inspection of the interior of the car. Had a careful inspection been made in this instance by a competent, trained railroad employee, the dangerous condition, although not readily apparent to an untrained eye, would have been discovered and could have been corrected or another car furnished.
The negligence of the railroad in furnishing a car with a dangerous condition and in failing to make a reasonable, careful inspection of the car and the negligence of Loket-Sanders in creating the dangerous condition were concurring legal causes of the accident resulting in injuries to plaintiff. Accordingly, we find Loket-Sanders and the railroad companies liable *608 in solido for the damage caused by their concurring negligence.
THIRD PARTY DEMANDS
Loket-Sanders and its insurer and the two railroad companies filed third party demands against each other, seeking judgment over against the other for the full amount of any judgment rendered against them in favor of plaintiffs. Although the third party petitions pray for recovery of the full amount of any judgment, they should be construed as seeking contribution under LSA-Civil Code Art. 2103. Cuccia v. Pratt Farnsworth, Inc., 155 So.2d 41 (La.App. 4th Cir. 1963). As joint tort feasors cast in solido, each are entitled to enforce contribution against the other. The judgment will be amended accordingly.
QUANTUM
The district court awarded $6,500 for plaintiff’s pain and suffering, plus stipulated special damages. Plaintiff sustained a severely comminuted fracture of the right tibia at the knee joint, requiring the application of a long leg cast for two months. He has a fifteen per cent permanent impairment to his right leg. Plaintiff returned to his job seven months after the accident and at trial plaintiff testified he still suffered pain in his leg. We find no abuse of the trial court’s much discretion in fixing the amount of the award.
DECREE
.For the reasons assigned, the judgment of the district court is affirmed in part, reversed in part, amended and recast as follows :
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of plaintiffs, I. V. Davenport and Employers Mutual Liability Insurance Company of Wisconsin and against defendants, Loket-Sanders Paper Company and Employers-Commercial Union Insurance Company and against Texas & Pacific Railroad Company and Missouri-Pacific Railroad Company, in solido, in the full sum of Twelve Thousand Two Hundred Nine and 34/100 ($12,209.34) Dollars, together with legal interest thereon at the rate of seven per cent (7%) per annum from date of judicial demand until paid and for all costs of these proceedings, including $75 as expert witness fee for Dr. James L. Zum Brunnen; which judgment is apportioned as follows:
(1) To plaintiff, Employers Mutual Liability Insurance Company of Wisconsin, the full sum of Three Thousand Three Hundred Forty-eight and 38/100 ($3,348.38) Dollars, together with legal interest thereon at the rate of seven per cent (7%) per annum from date of judicial demand until paid, together with all costs of these proceedings.
(2) To plaintiff, I. V. Davenport, the full sum of Eight Thousand Eight Hundred Sixty and 96/100 ($8,860.96) Dollars, together with legal interest thereon at the rate of seven per cent (7%) per annum from date of judicial demand until paid, together with all costs of these proceedings including the expert witness fee of $75 for Dr. James L. Zum Brunnen.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of Loket-Sanders Paper Company and Employers-Commercial Union Insurance Company against Texas & Pacific Railway Company and Missouri-Pacific Railroad Company, and in favor of Texas & Pacific Railway Company and Missouri-Pacific Railroad Company, against Lok-et-Sanders Paper Company and Employers-Commercial Union Insurance Company, for contribution; each, as between themselves, being liable only for its virile *609 portion of the judgment in favor of plaintiffs.
The costs of appeal are assessed equally to (1) Loket-Sanders Paper Company and Employers-Commercial Union Insurance Company; and (2) Texas & Pacific Railway Company and Missouri-Pacific Railroad Company.
Affirmed in part, reversed in part, amended and recast.