886 F.2d 105
 Linda ROUILLIER, Plaintiff-Appellant,
and
Gaylord Container Acquisition Corporation and/or Gaylord
Container Corporation, Intervenors-Third Party
Defendants-Appellants-Appellees-Cross Appellants,
v.
ILLINOIS CENTRAL GULF RAILROAD and Waterloo Railway Company,
Defendants-Third-Party
Plaintiffs-Appellants-Appellees-Cross Appellees.
 No. 88-3751.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 17, 1989.
 
 1
 David S. Kelly, Walter F. Marcus, III, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for Illinois Cent. Gulf R.R.
 
 
 2
 Kathy C. Alford, Ronnie G. Penton, Bogalusa, La., for Rouillier.
 
 
 3
 Craig J. Robichaux, Charles M. Hughes, Talley, Anthony, Hughes & Knight, Bogalusa, La., for Gaylord Container.
 
 
 4
 Appeals from the United States District Court for the Eastern District of Louisiana.
 
 
 5
 Before GEE and JONES, Circuit Judges and HUNTER*, District Judge.
 
 EDWIN F. HUNTER, Jr., District Judge:
 
 6
 Plaintiff and intervenor appeal from the trial court's refusal to enter judgment in their favor notwithstanding the jury's verdict which exonerated Illinois Central Gulf Railroad from liability. They also appeal the denial of their alternative motion for a new trial. The railroad appeals from the dismissal with prejudice of its third party complaint for contractual indemnity. We affirm the judgment of the district court in all respects.
 
 
 7
 Course of Proceedings and Disposition Below
 
 
 8
 Alleging personal injuries sustained during efforts to open the door of a boxcar placed by Illinois Central Railroad Company on the premises of her employer, Gaylord Container Corporation, plaintiff Linda Rouillier commenced suit against the railroad. Gaylord Container filed a petition of intervention, seeking recoupment of worker's compensation benefits and medical expenses incurred by it.
 
 
 9
 Analytically, there are two separate (though necessarily interrelated) "sub-cases" here presented. The first involves the dispute between Linda Rouillier and Gaylord (in its capacity as worker's compensation intervenor) on the one hand and the defendant railroad on the other hand. The second "sub-case" involves a dispute between the railroad on the one hand and Gaylord--in its capacity as third party defendant--on the other. The question at issue from the railroad's point of view is whether its contractual claim against Gaylord for recovery of the attorney's fees and expenses was properly dismissed with prejudice.
 
 
 10
 The railroad and Crown Zellerbach Corporation ("Crown") entered into a written contract, sometimes referred to within the industry as "Sidetrack Agreement" governing the construction, maintenance, use and removal of certain spur lines and sidings within and upon Crown's property. Subsequently Gaylord acquired Crown's interest in the subject facility, and with respect to this litigation by stipulation of the parties, "Gaylord is the successor in interest to Crown Zellerbach and assumed all of Crown Zellerbach's obligations and liabilities, including, but not limited to all obligations under the Sidetrack Agreement entered."
 
 
 11
 The relevant portion of the Agreement upon which the railroad relies is Section 4(b)(2), which reads:
 
 
 12
 (ii) Industry (Gaylord) shall assume responsibility for and defend Railroad from all losses (including claims for injuries to employees of Industry or of Railroad), expenses, attorney's fees, damages, claims and judgment, arising from or growing out of the negligent acts or omissions of Industry (Gaylord), its agents or employees, solely or in conjunction with a third person.
 
 
 13
 Having been sued by Linda Rouillier for the personal injuries and damages she allegedly sustained while attempting to open the door of a boxcar delivered to her employer's (at the time Crown Zellerbach) premises for loading, the railroad filed a third party complaint upon Gaylord, seeking contractual indemnity and alternatively contribution.
 
 
 14
 At the final pretrial conference the court ordered that the trial be bifurcated, with the jury to hear evidence on and consider the liability issues first. Only in the event that the railroad was determined to be liable to plaintiff would the jury then hear and consider evidence respecting the nature and extent of plaintiff's injuries.
 
 
 15
 There was some discussion at the final pretrial conference about the proper method for handling the issues presented by the third party complaints for contractual indemnity. Regrettably, the minute entry does not reflect the agreement. Counsel for the railroad recollects the parties agreed that the contribution and/or indemnity issues arising out of its third party demand against Gaylord would be determined by the court predicated upon the jury's disposition of the disputed factual issues presented by the principal claims of the plaintiff. The trial court, however, entertained a different recollection and summarized the agreement as follows:
 
 
 16
 "... the jury would determine the issues of fault and causation among the respective parties, and upon receiving the jury's verdict the court would, if necessary, interpret the Sidetrack Agreement to allocate the loss, if any, based on the jury's allocation of fault."
 
 
 17
 Counsel graciously accepted responsibility for failing to have the precise agreement memorialized in writing before trial and agrees that the district judge's recollection is consistent with much of the discussion, and for purposes of appeal accepts as controlling the trial court's recollection of the agreement reached at the final pretrial conference.
 
 
 18
 The case was tried and argued. The jury was charged and it returned its verdict exonerating the railroad of liability to plaintiff. The jury expressly followed the court's written instructions in completing the verdict form. Responding affirmatively to question number one, which questioned the occurrence of an accident involving plaintiff on June 23, 1986, the jury then turned to question two which stated:
 
 
 19
 "Were defendants Illinois Central Gulf Railroad and Waterloo Railway Company negligent?"
 
 
 20
 The question was answered negatively. The next instruction read:
 
 
 21
 "If your answer to question 2 was 'yes,' go to question 3.
 
 
 22
 If your answer to question 2 was 'no,' please skip the remaining questions, date and sign this form, and return to the courtroom with your verdict."
 
 
 23
 This is precisely what the jury did. The court proceeded to enter its verdict, which in pertinent part, ordered that a judgment be entered in favor of third party defendant Gaylord and against the railroad, dismissing the third party (railroad's) complaint against Gaylord with prejudice. Third party plaintiff does not challenge as error the trial court's refusal to resolve the factual issues (not resolved by the jury), but urges as patent and palpable error the entry of the judgment dismissing its contractual claim against Gaylord with prejudice.
 
 FACTS
 
 24
 At the time of her alleged accident of June 23, 1986, Linda Rouillier was employed at the Crown Zellerbach (Gaylord) plant in Bogalusa as a "car bracer." Her duties included the preparation of boxcars delivered by the railroad to the plant for loading so that her employer's products could then be shipped by rail to its customers nationwide. A necessary part of a car bracer's job included inspecting the interior of the empty boxcars delivered, and to the extent a given car's doors were closed on Gaylord's receipt, the bracer would be called upon to open them.
 
 
 25
 Three parallel spur tracks were situated on Gaylord's property contiguous to the company's loading dock. Typically, cuts of cars would be "spotted" (or placed) on these three tracks in side-by-side fashion so that ramps could be placed between them and onto the loading dock itself, to facilitate the actual loading of the cars (which was performed by other Gaylord's employees using forklift trucks). The bracer's duties included placement of the metal plates (like bridges) between the cars and to the platform.
 
 
 26
 On the date of Ms. Rouillier's accident, she was assigned the task of readying a number of cars for loading. She experienced difficulty opening one of the car's doors (not the car involved in her accident) and pursuant to ostensible company policy, called on her supervisor, Kelly Western, for help.
 
 
 27
 She returned to the spur tracks and went to a different car--WLO # 528257, a boxcar owned by Emons Industries, Inc. and under lease to IC. It was in her attempts to open this car door with force that she allegedly injured her back. She wanted to drag the car door open by attaching a chain and hook to its edge, attaching the other end of the chain to a forklift. The opening between the door and the sill was too small, so she attempted to open it a little wider with a short pry bar. She yanked the pry bar so forcefully she knocked herself off balance and fell.[1]
 
 
 28
 The evidence is explicit that when a car bracer is having trouble opening a boxcar door, he or she is to report it to his or her supervisor. Mr. Kelly Western explained the purpose for procedure:
 
 
 29
 "The purpose of reporting is to tell me or notify me that they are having a time opening a door, time consuming, being maybe we would move on to another car maybe with my more experience of being out there longer I know a better way of opening the car to save on thereself, keep from being injured or equipment wise."
 
 
 30
 Plaintiff reported to Mr. Western, but it does not appear that he ever came to help.
 
 
 31
 JUDGMENT N.O.V. AND ALTERNATIVELY FOR NEW TRIAL
 
 
 32
 Is Rouillier's appeal based on the trial court's refusal to enter judgment in her favor notwithstanding the jury's verdict meritorious? The clear answer is "no". Did appellants, Rouillier and Gaylord, demonstrate abuse of discretion by the trial judge in his denial of their new trial motions? The short strong answer is that they failed in that endeavor.
 
 
 33
 The trial judge weighed plaintiff's J.N.O.V. motion under the proper standard and correctly concluded that plaintiff's evidence of defendants' fault was not so overwhelming or compelling that reasonable minds would have concluded defendants were negligent.[2]
 
 
 34
 Plaintiff Rouillier misappreciates the substantive law applicable to an originating rail carrier as respects its duty to inspect a railcar pre-delivery to its customer. Jacob v. Illinois Cent. R. Co., 133 La. 735, 63 So. 306 (1913) and Davenport v. Loket Sanders Paper Co., 287 So.2d 601 (La.App.2d Cir.1974) do not impose a species of strict or absolute liability on an originating carrier obliging it to furnish to its customers an absolutely perfect car. The duties imposed by law upon an originating carrier require it to perform a reasonable inspection of the car and to supply a reasonably fit car free of latent defects that present unreasonable risks to the customer and its employees. Davis v. St. Louis Southwestern Ry. Co., 106 F.Supp. 547 (W.D.La.1952) and Griffin v. Missouri Pacific R. Co., 413 F.2d 9 (5th Cir.1969) simply recognize this rule.
 
 
 35
 The trial court did not abuse its discretion in denying the alternative motions for new trial urged by plaintiff, Linda Rouillier and "protectively" by intervenor Gaylord. The verdict of the jury--exonerating the railroad of negligence and hence of liability--was not contrary to the clear or great weight of the evidence. There was ample evidence upon which the jury could have based its conclusions that the car delivered by the railroad was not defective (i.e., that its condition did not present any unreasonable risk of injury) and/or that the pre-delivery inspection was adequate. The evidence predominates in favor of those conclusions.
 
 
 36
 The railroad asserted a claim for contractual indemnity. It is true that Gaylord enjoyed immunity from contribution and/or indemnity claims arising quasi ex delicto (in tort) as a consequence of its status as plaintiff's employer, that immunity did not insulate it from contractually based claims for contribution or indemnity. See La.R.S. 23:1101 et seq.; Minvielle v. Kaiser Aluminum & Chemical Corp., 766 F.2d 189 (5th Cir.1985). Sidetrack Agreements like the one in effect here give rise to contractual indemnity claims not to claims in tort. See, Missouri Pacific R.R. Co. v. International Paper Co., 618 F.2d 492 (8th Cir.1980).
 
 
 37
 Rouillier's contentions that a new trial should have been ordered because of references in the jury instructions and verdict form to her employer's alleged negligence warrant short shrift. No error was committed by the trial court in charging the jury as to the duties applicable to plaintiff's employer or including in its verdict form a question addressing Gaylord's negligence.
 
 
 38
 The court was required to instruct the jury as to the legal standards to be applied in considering averments of Gaylord's negligence in light of the pendency of the third party claim for contractual indemnity.
 
 
 39
 In any event, any "error" of this nature was patently harmless because the jury never reached or resolved the questions of Gaylord's negligence.
 
 THE DISMISSAL WITH PREJUDICE
 
 40
 The railroad insists that the court's dismissal of its third party complaint against Gaylord with prejudice constituted clear error. This is so, they argue, because there remain totally unresolved issues of fact, the resolution of which are essential to an adjudication of contractual rights against Gaylord. The trial court labelled this contention as "unrealistic". We prefer to characterize it as plausible and ably presented, but given the unusual circumstances, we ratify the trial court's assessment of the effect of the jury verdict.
 
 
 41
 At the conclusion of trial and at the charge conference, counsel and the district court conferred on the form and substance of the jury interrogatories. The verdict form actually submitted to the jury contained provisions for allocating fault to all parties, Rouillier, IC and Gaylord, if applicable. Between each interrogatory on a disputed factual issue by agreement of counsel the jury was provided instructions. The pertinent instruction provided:
 
 
 42
 If your answer to question 2 was "no," (the question concerning IC's negligence), please skip the remaining questions, date and sign this form, and your verdict.
 
 
 43
 The railroad's argument that it should be allowed to proceed against Gaylord for its cost of defense is premised on the fact that the jury failed to apportion fault to other possible actors. We reiterate that Gaylord's and Rouillier's alleged fault, if any, was submitted to the jury; however, the jury did not resolve these issues because the interrogatories, which counsel approved, instructed them not to do so. The district court noted:
 
 
 44
 While the lack of objection of the Railroad's counsel at trial may well have been an oversight on their part--their efforts being directed primarily toward avoiding an award to plaintiff--the court cannot say without doubt that their lack of objection was not a trial tactic, even if perhaps only a subconscious one, in order to assure that the jury not confuse the singular task of determining whether the Railroad was negligent.
 
 
 45
 Having failed to object for whatever reason, the Railroad cannot now have this Court find that plaintiff and/or Gaylord was negligent. Without such a finding, the Railroad's claim for costs must fail ...
 
 
 46
 Counsel for the railroad speculates that the trial court's alleged error may have stemmed from its misappreciation of the obligations under the contract. We cite from their brief:
 
 
 47
 IC speculates, but of course cannot establish, that the trial court's judgment of June 9, 1988, dismissing its third party complaint against Gaylords with prejudice, stemmed from the trial court's misappreciation of the rights and obligations created by the written contract upon which the third party complaint was based. If the trial court failed to realize that the contract potentially entitled IC to recover its defense costs, expenses and attorney's fees for successfully resisting the principal demands on proof of Gaylords' liability (direct or imputed), the trial court would naturally conclude that the jury's verdict exonerating IC from any liability to plaintiff automatically defeated IC's third party indemnity/contribution claim against Gaylords. The logic of such an assumption is simple: IC does not have to pay anything to plaintiff, therefore there is nothing for Gaylords to indemnify or contribute to; thus dismissal of the indemnity/contribution claim is appropriate.
 
 
 48
 The short answer to this contention is that it is "speculation" pure and simple. The court appreciated precisely what was at issue:
 
 
 49
 "The Railroad moves to amend the judgment in order for the court to award it its costs of defense, to which the Railroad argues it is entitled under the Sidetrack Agreement."
 
 
 50
 Not totally unlike the situation at bar is the case of Pielet v. Pielet, 686 F.2d 1210 (7th Cir.1982), cert. denied 459 U.S. 1107, 103 S.Ct. 733, 74 L.Ed.2d 957 (1983). In Pielet, plaintiffs asserted claims for entitlement to benefits under a profit sharing plan. Defendants asserted a counter claim for damages and injunctive relief. Following the close of all evidence, it was agreed that a single interrogatory would be submitted, the language was approved by counsel. Following deliberation and the jury's verdict, judgment was entered consistent with the jury's answer to the single interrogatory in favor of plaintiff on the principal demand. Defendants' counter claim was dismissed since the single interrogatory did not address the issue. The Seventh Circuit held the lack of objection constituted a waiver of submission of the counter claim to the jury. We hasten to add that in Pielet, there was an explicit waiver.
 
 
 51
 Mr. Foote: Well Your Honor, if the jury in response to this interrogatory answers it "No", meaning they were not prohibited, do I understand then that that ends this entire case, other than Your Honor entering judgment on the issues in this case?
 
 
 52
 The Court: That's what I said.
 
 
 53
 Mr. Foote: Let me talk to Mr. Wendrow.
 
 
 54
 Mr. Foote: Very well Your Honor.
 
 
 55
 The Court: All right.
 
 
 56
 Mr. Foote: You have my agreement.
 
 
 57
 The Court: Well, I think that we have,--I think that we have everything now agreed upon.
 
 
 58
 Pielet at p. 1217.
 
 
 59
 In the instant case there was no explicit agreement. But, the trial court was emphatic in its holding that a negative answer to interrogatory two (2), ended the "ball game" as to indemnity issues. The jury interrogatories utilized were so phrased as to preclude further recordation of the jury's conclusions in the event it exonerated the railroad of liability. The jury did precisely that and, following precisely the verdict form's instructions, did not reach the issue of possible Gaylord culpability. The record renders it difficult, in fact impossible, for those of us absent from the scene to ascertain what was contemplated to be the effect of the jury's negative response to the second interrogatory. We accept, without a moments hesitation, counsel's assertion that he never intended to waive his claim for indemnity as a result of his total victory on the merits. However, we note too, as did the court below that counsel could have easily noted prior to submission of the case that a negative response would not have that effect. No such notation or reservation was made. The trial judge was part and parcel of every conference. The rationale of his decision was that the parties had agreed that such a response would terminate the indemnity issue. Deference is due that finding. We decline to second guess the trial court.
 
 CONCLUSION
 
 60
 In summary, we are unpersuaded that any reversible error was committed at the trial below, and we affirm, in all respects, the final judgment appealed from, entered in the district court on September 15, 1988.
 
 
 61
 AFFIRMED.
 
 
 
 *
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [1]
 Counsel for Ms. Rouillier makes an issue out of the use of the term "yank," denying it was Ms. Rouillier's term. The record shows she was plainly asked if she yanked on the bar under cross-examination, and she acknowledged she had
 
 
 [2]
 We will uphold a jury's factual findings unless "the facts and inferences point so strongly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict ..." Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc)